KILLIS BROWN, guardian, plaintiff in error, *vs.* WILLIAM WRIGHT and wife *et al.*, defendants in error.

1. A guardian, who acted with the caution of a prudent man, and loaned the money of his wards, prior to the adoption of the Code, 1st January, 1863, and took a note well secured by a mortgage upon negro property, which was lost by reason of the emancipation of the slaves, is not liable to his wards for the amount so lost.

2. A guardian, who acted in good faith, and received Confederate Treasury notes in payment of debts due his wards, at a time when prudent men generally received them in payment of all debts due, acted under color of law, and is protected by the Act of 1866 and the Ordinances of the Conventions of 1865 and 1868. And if he loaned out the funds so received prior to 1st January, 1863, upon what was, at the time, good security, and they were afterwards lost by the results of the war, he is not liable.

3. A guardian who loaned out or invested the funds belonging to his wards, after the adoption of the Code, *without an order of Court*, did so at his own risk, unless the investment was in the stocks, bonds or other securities, authorized by law; and he is liable for the value of the money or currency received by him, and so invested or loaned, allowing him a reasonable time to invest it, whether he lost it or not.

4. Where the guardian loaned out the money of his wards, after the adoption of the Code, without an order of Court, and took a note for $1,500 for its repayment, and the Court, on the trial, refused to allow the note to be read in evidence, because it was no stamped: *Held*, that the Court did not err, as the guardian was liable in any event, in such case, for the value of the currency when received, allowing him a reasonable time to re-invest, and the note, whether stamped or not, was properly rejected.

Liability of guardians. Confederate money. Before Judge POPE. DeKalb Superior Court. October Term, 1869.

Brown was guardian of two Misses Gentry, who married William Wright and his son, William A. Wright, and was sued by them for a settlement. The dispute was as to the amount due them.

The plaintiffs showed the record of his actings and doings as administrator of Mason Gentry, the father of said ladies, from the 1st of June, 1857, till the 5th of June, 1863, at which last date, as such administrator, he turned over to himself, as guardian of Mason Gentry's minors, $5,966 53, and read the record of his actings and doings as such guardian.

Brown *vs.* Wright and wife *et al.*

As guardian, he had charged them board, and had allowed them nothing for work and labor done for him. It was shown that these ladies and a brother were the only heirs of Mason Gentry, that the boy died, a minor, in 1862. The Court of Ordinary had rendered a judgment in favor of plaintiffs against Brown for $5,170 98, as balance due upon settlement, allowing him to deliver to the plaintiffs a note on Meredith Brown for $1,940 00 as part of the said $5,170 98, and that they recover of Killis Brown, guardian, a balance of $2,-290 45, less $50 45 for commissions, and $17 75 for taxes, and $20 20 for costs, and ordering that *fi. fa.* issue for $2,-224 25 and costs. This judgment was read in evidence.

Evidence was introduced to show that when said note on Meredith Brown was taken, Meredith Brown was insolvent, that the wards lived with and worked for Killis Brown, performing domestic labor and occasionally light work in the farm, such as dropping corn, etc., and that Killis Brown had said he would not charge them board.

The plaintiffs having closed, the defendant testified, that, in 1860, he loaned Meredith Brown $1,947 00 of the funds of said Gentry minors, and took said note therefor, with a mortgage on five slaves, worth $3,000 00, to secure its payment; said he had no recollection of saying he would charge no board; that he loaned $500 00 of Confederate currency, which belonged to said minors, to Benjamin Thurman, and that Thurman paid it and $50 00 interest in the same kind of currency, in the Spring of 1865, and he produced a package, saying it was the identical currency so paid him and became worthless in his hands; that Judge Ezzard, in 1862 or 1863, collected for him $1,400 00 or $1,500 00 from Almond upon a claim for money loaned Almond, and due said minors, and that he loaned it out to J. A. Reeves and T. P. Flemming as security, and that that amount was lost.

He admitted that he had taken no legal steps to force Meredith Brown to pay said note. He and other witnesses, including Meredith Brown, testified to the solvency of Meredith Brown in 1860, and Meredith Brown also testified that he still had property, indeed, about all he had at that time, except the

slaves, who were emancipated while they were his, and that he had a little that he did not have then. The defendants read in evidence said note and mortgage, and the receipt for said taxes, and closed. His counsel requested the Court to charge the jury that a guardian is bound to pay interest on the funds of his wards, in his hands, unless he proves that he could not loan them, and he did loan the money, and take a mortgage on slaves of sufficient value to secure the payment of the debt, and the debt is lost by reason of the emancipation of the slaves, the guardian is not liable.

The Court refused so to charge, but, on the contrary, charged the jury as follows : If a guardian loaned the money of his ward, he did it at his own risk, and, notwithstanding, he took security, good at the time, if the security afterwards became insolvent and the money was lost, the loss must fall upon the guardian ; that the only way in which a guardian could be protected in parting with the funds of his ward, is by investing the same in stocks, bonds, or other securities issued by the State, or in other property in pursuance of an order of Court; that, in computing interest, they would compute it at seven *per centum per annum* for the first seven years, and after that, at six *per centum per annum*, and compound it every year, unless the guardian had charged himself with interest in his returns, and then he is entitled to ten *per cent.* on the amount of interest.

The jury found a verdict for $4,800 00 and costs against the defendant. His counsel moved for a new trial, upon the ground that the Court erred in each of the two divisions of said charge, and in the third, under the circumstances of this cause; in refusing to charge as requested; in ruling out the note on Reeves and Flemming, dated in August, 1863, because it was not stamped, and because the verdict is contrary to the evidence and the charge of the Court. The bill of exceptions does not state that the note on Reeves and Flemming was offered as evidence.

The Court refused a new trial, and this is assigned as error upon each of said grounds.

WILLIAM EZZARD, for plaintiff in error, said guardians are bound to ordinary diligence, Code, sec. 2300; *Campbell vs. Miller,* 38 *Ga. R.,* 304. As to computing interest, see Acts of 1862-3, 30; *Fall vs. Simmons,* 6 *Ga. R.,* 265; Acts 1865-6, 86.

HILL & CANDLER, for defendants in error. As to guardian's duties and liabilities, cited Code, secs. 1813-15-19-22-34-28, 2; Story's Eq. Juris., section 1273, 4; 2 Hill on Trustees, s. p., 378; 2 Kent's Com., 230; 4 John's Ch. R., 281; Cobb's Dig., 328, 333, 337. As to computing interest, Code, secs. 2549-2562. As to the request to charge, 34 Ga. R., 330; 35th, 31; 36th, 371, and said even if the Court had erred, the verdict was right, and should stand, 10 Ga. R., 429; 34th, 263; 26th, 171; 37th, 195, and cases decided at this term, Green & West vs. Cook, and Bruce vs. Crews.

BROWN, C. J.

The evidence shows, in this case, that the guardian acted with the caution of a prudent man, in the loan made to Meredith Brown; as he took a mortgage on negro property worth, at the time, $3,000 00, to secure the payment of $1,940. It is the duty of a guardian to keep the money of his ward at interest, and if he fails to do so, without good cause, he is liable for interest. Prior to the adoption of the Code, 1st January, 1863, the practice in this State was for the guardian to keep the money invested; and, if he acted continuously as a prudent man acts in the transaction of his own business, and loaned the money of his ward in good faith, upon security which was undoubted at the time, and, by any unforeseen event or casualty, the security became insufficient, and the debt was lost, without fault on his part, he was not liable. This seems to have been a reasonable rule.

1. The rule in England was never adopted, in practice, in this State, in all its stringency. The debt of England is immense, and, in order to sustain the public credit, it has been necessary to create, as far as possible, a demand for the

public securities. Hence sprung the rule of the English Chancery, requiring all trust funds, not secured by real estate, to be invested in them : See Story's Equity Juris., 1269–1275. The English Chancellors had generally been politicians in earlier life; and they very well understood the public policy which demanded a strict enforcement of the rule. The condition of Georgia was very different. Prior to 1861, her debt was merely nominal, and there was no public policy which required the trust funds of her people to be invested in her own securities. By the Act of 1845, such investments are authorized, but there is nothing compulsory in the Act : Cobb's Digest, 333. In this case, we hold that the guardian was not liable for the amount lost by the emancipation of the slaves, the security, by mortgage on the slaves, having been ample at the time it was taken.

2. The Ordinance of the Convention of 1865 declares " that *all acts* and sales of executors, administrators, trustees, and guardians; and of judicial and ministerial officers, had, done, or performed, and made *bona fide,* and in pursuance of, and under *color of law,* since the 19th day of January, 1861, which are not in conflict with the Constitution of the United States, and of the Constitution of this State, be and the same are hereby ratified and confirmed," etc. The Act of 1866 is to the same effect. The Ordinance of the Convention of 1868 adopts the Ordinances of the Convention of 1865, which are of a legislative character, except certain Ordinances mentioned, and gives them the force of law. The 12th section of the 11th article of the new Constitution of this State, adopts all Ordinances of the Convention of 1868, of a mere legislative character, and gives them the force of law, till otherwise provided by the General Assembly. These Ordinances and this provision of the Constitution ratify the *acts* of guardians and other trustees who invested trust funds in good faith, in State or Confederate securities during the war, under the Acts of the Legislature authorizing such investments.

A guardian or other trustee, who, in good faith, received Confederate or State notes or securities, in payment of a debt

Brown *vs.* Wright and wife *et al.*

due on account of the trust; when prudent men were generally receiving them in payment of all dues in the transaction of their own business, will, in like manner, be protected. And if he loaned out the funds so received, at interest, on what was at the time, by prudent men, considered good security, and they were afterwards lost by the results of the war, without fault on the part of the guardian or trustee, he is not liable.

3. We hold that section 2304 of the Revised Code changes the rule as it existed prior to 1st January, 1863. That section provides that "*any trustee holding trust funds*, may invest the same in stocks, bonds or other securities issued by this State, making a true return of the price paid and time of purchase. Such investments shall be free from taxation so long as held for the trust estate. *Any other investments of trust funds* must be made under an order of the Superior Court, within the term, or granted by the Judge in vacation, *or else at the risk of the trustee.*" We think this language broad enough to embrace guardians, as well as all other trustees, or persons having the management of trust funds. The policy of the State, at the time of the adoption of the Code, seems to have changed. The expenses then being incurred in the prosecution of the war, were heavy and the debt which our people then expected to pay, was increasing, and it became an object to have trust funds invested in State securities; and all other investments were declared to be at the risk of the trustee, if not made under the order of the Superior Court, or the Judge of that Court in vacation. If this guardian, without an order of Court, invested the funds or currency, which he held in trust, after the 1st January, 1863, in securities other than the stocks, bonds, or other securities issued by this State, he did so at his own risk, and he is liable for the value of such currency at the time of such investment.

Whether such an investment, made at the time, might not have resulted in a total loss of the sum invested, by the repudiation of the State war debt, we need not enquire. Such was the requirement of the law as it then stood, and as it

now stands. If the guardian had followed the law, and loss had resulted, it would not have fallen upon him.

We do not deem it important to enquire whether or not the Court erred in rejecting the note for want of a stamp. If the guardian loaned the currency after the 1st of January, 1863, and took personal security, without an order of Court, he is liable for its value, in any event, under the rule just laid down, and the Judge did right to reject the note when tendered in evidence, whether stamped or not stamped.

We reverse the judgment of the Court below, and direct that a new trial be had under the rules above laid down.