THE FIRST NATIONAL BANK OF WHITEHALL *vs.* JAMES LAMB and others.

THE SAME *vs.* THE SAME.

THE SAME *vs.* THE SAME.

The statutes of the State of New York against usury do not apply to loans made by national banks organized under the act of congress, passed June 3, 1864, entitled "An act to provide a national currency," &c.

In regard to the express provisions of that act, the federal government has exercised its sovereign power over the law of these institutions; and to that extent its power, and its enactment, is exclusive. The State law penalties have no application to the system.

Although the statute has subjected national banks organized under its provisions to the judicatories of the State, so that as to the form of the action and the proceeding in its courts, the State system of practice is, and must be adopted; the federal government not having in that particular expressly asserted its own power; yet in whatever court the action may be pending, the law prescribed in the express provisions of the act of congress is sovereign and exclusive.

THE plaintiff in each of these actions is a "national bank," organized under the act of congress of June 3d, 1864. The actions are severally upon promissory notes,

against the makers and indorsers: The defendants all reside within this State, and the notes were made and negotiated in this State. The defense set up was usury, in corruptly taking more than seven per cent per annum for the loan of money,, whereby the said notes were void. The judge, at the circuit, held that the State laws against usury did not apply to banks organized under this act of congress. This is the question discussed in the case.

*H. Gibson* and *W. A. Beach,* for the plaintiff.

*Potter & Tanner* and *Hughes & Northrup,*· for the defendants.

*By the Court,* POTTER, J. Two objections raised in these cases, one relating to the practice on the trial, the other to the sufficiency of proof of the plaintiff's articles of association, have no sufficient merit to' require much examination at our hands. The learned judge, on the trial, held that the statutes of the State of New York against usury do not apply to loans made by banks organized under the act of congress passed June 3, 1864, entitled "An act to provide a national currency secured by a pledge of State bonds, and to 'provide for the circulation and redemption thereof." This ruling of the judge is the only real question arising in this case. Judicial construction of the intent of the national legislature, as to the terms employed in the act referred to, is what the court are called upon to give.

1st. It will be assumed to be a conceded point that it was within the power of congress, under the constitution of the United States, to enact the law in question; and it is perhaps as fully conceded that an act of congress passed under the implied powers of the constitution, has as much potency as one enacted under the express powers of the same instrument. It is equally within the constitu-

tion, and such implied powers are also as much prohibited to the States, as if they had been expressly forbidden. (*McCulloch* v. *Maryland*, 4 *Wheat.* 427. *Weston* v. *City of Charleston*, 2 *Pet.* 467. *Sturges* v. *Crowninshield*, 4 *Wheat.* 193.) And the constitution itself declares that it, and the laws of the United States which shall be made in pursuance thereof, shall be the supreme law of the land; and the judges of every State shall be bound thereby, anything in the constitution or laws of any State to the contrary notwithstanding. (*Const. U. S. art. 6.*) It has been adjudged that under the provisions of the constitution, it is in the power of congress, in a class of cases, to confer such jurisdiction, and to institute such proper courts and tribunals, inferior to the Supreme Court, as to secure a harmonious and efficient working of a system of jurisprudence. (*Martin* v. *Hunter's Lessees*, 1 *Wheat.* 134.) In another class of cases it is held that the several States can exercise legislative power, except in so far as that power is abridged by the federal constitution. (*Sturges* v. *Crowninshield*, 4 *Wheat.* 192, 193.) In this class the power is concurrent; though this concurrent power does not extend to all cases in which its exercise is not expressly prohibited. And there is still another class of cases, where State laws may be enacted, and remain valid until the same power is exercised by congress; and when this is done, the State law in that respect is suspended in its operation. (*Id.* 196.) The power of creating corporations is a power appertaining to sovereignty. And these powers, under our system, belong to both national and state governments, and are divided between the government of the Union, and those of the States. They are each sovereign with respect to the objects committed to it, and neither is sovereign with respect to the objects committed to the other. (*McCulloch* v. *Maryland*, 4 *Wheat.* 410.) That the national legislature possessed the full power to legislate in regard to these national banks, and, as to them, to exercise its juris-

diction in its enactments as to all things *necessary and proper* in order to carry its powers into execution; and to regulate the exercise of such powers by such conditions, upon such considerations and by such rules and penalties as to prevent extortion, is a proposition too self-evident to require argument. In this respect the national legislature is unlimited. It was acting within its legitimate sphere, under the implied powers of the federal constitution, which was ordained and established by the people themselves, and for their own government. Therefore, an act of congress passed in pursuance of clear authority, under the constitution, is the supreme law of the land. (*United States* v. *Hart, Peters C. C. Rep.* 390.) The act in question was an appropriate means, plainly adapted to the end, of exercising the express powers of the national constitution; and the degree of its necessity was a question of legislative discretion, and not of judicial cognizance. '(4 *Wheat.* 316.)

The discussion in this case, then, is limited to this single question: Do the usury laws of the State of New York apply to notes discounted by these national banks? The 8th. section of the act of congress gave them authority "by their name, to make contracts, to sue and be sued, complain and defend in any court of law or equity, as fully as natural persons." This power gave them the right to sue in the state courts upon the obligations in this action. Then may the usury laws of the State, which make void contracts tainted with usury, as defined by the law of this State, be interposed as a total defense in an action upon such notes? The 30th section of the act of congress authorizes them to take interest on such notes at the rate allowed by the laws of this State; and such interest may be taken in advance, reckoning the days for which the note has to run. It then prescribes the penalties for taking an excess of interest, in the following terms: "And the knowingly taking, receiving, reserving or charging a rate of interest greater than aforesaid shall be held

and adjudged a forfeiture of the entire interest which the note * * carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back in any action of debt, twice the amount of interest thus paid, from the association taking or receiving the same; provided that such action is commenced within two years from the time the usurious transaction occurred." Are the defendants confined to the remedy conferred by this act? May the penalties prescribed by the statutes of this State be set up as a defense? Are the penalties in the act of congress merely cumulative to those of the State? In other words, what was the intent of congress in this regard? These are only different methods of stating the same question. The answer to one is the answer to all.

The *intent* of congress must be determined from reason, and from established rules of construction, in analogous cases. Puffendorf says: "That which helps us most in the discovery of the true meaning of the law, is the reason of it, or the cause which moved the legislature to enact it."

If the penalties given by the act of congress are cumulative, leaving the state law also in force, the penalties in the former would probably never be set up as a defense; the latter being a defense to the whole contract, principal and interest, while the former goes only to the interest. So if both are in force, the state law can first be used to defeat the entire recovery upon the contract, which is thereby made void; and by the law of congress there would be superadded, by way of further penalty, the liability to have recovered back twice the amount of the interest that had been paid. I do not think it reasonable to suppose that congress intended to add to the penalties existing by the state law. That was no part of the reason for its enactment, and therefore the law of congress is not

cumulative. Vattel, in his rules of construction of stat-
utes, says "that everything that contains a penalty is
odious, with respect to laws; therefore judges should be
inclined, in giving them construction, to take the merciful
view, and presume against giving interpretation in favor
of the penalty." (*Rule* 29.) And Grotius lays down the
rule that if it be necessary, to avoid injustice, to take
words in their strictest sense, we ought to stop at the nar-
rowest limits of their signification.

But I think the question here is strictly one of legis-
lative intent. The rule laid down by the Court of Ap-
peals, in *Dudley* v. *Mayhew*, (3 *N. Y. Rep.* 15,) is doubtless
the true rule; "that where a statute confers a right, and
prescribes an adequate means for protecting it, the propri-
etor is confined to the statute remedy." All other rem-
edies, in such case, are excluded. And also *Behan* v. *The
People*, (17 *N. Y. Rep.* 517,) "that where an *act* is prohib-
ited by a statute, which is not criminal at common law,
the legislature having fixed the penalty in the prohibiting
act, designed that there should be no other punishment."
In the case of *Smith* v. *Lockwood*, (13 *Barb.* 217,) it was
held that where a new right or means of acquiring it is
conferred, and an adequate remedy given for its invasion,
in the same statute, the parties injured are confined to
the statutory redress. To the same effect is *Renwick* v.
*Morris*, (7 *Hill*, 575;) *Bassett* v. *Carleton*, (32 *Maine R.* 553;)
*Andover Turnpike Co.* v. *Gould*, (6 *Mass. R.* 43;) *Franklin
Glass Co.* v. *White*, (14 *id.* 286;) 5 *John.* 175.

It was said in *Houston* v. *Moore*, (5 *Wheat.* 23:) "The
people would have reason to complain of the exercise of
the same powers by congress, and at the same time by the
state legislatures. To subject them to the operation of
two laws upon the same subject, dictated by distinct wills,
particularly in a case inflicting pains and penalties, is, to
my apprehension, something very like oppression, if not
worse. In short, I am altogether incapable of compre-

hending how two distinct wills can, at the same time, be exercised in relation to the same subject, to be effectual, and at the same time compatible with each other."

Judge Story, in his commentaries on the constitution, says, (§§ 439, 440,) "If there be a conflict between the laws of the Union and the laws of the State, the former being supreme, the latter must of course yield." He says: "It is an axiom, if power is given to create a thing, it implies a power to preserve it. A power to destroy, if wielded by a different hand, is hostile to, and incompatible with, this power to create and preserve. Where this repugnancy exists, the authority which is supreme must control, and not yield to that over which it is supreme. Consequently the inferior power becomes a nullity."

The act of congress in question is the only statute in existence, on that subject, enacted by the federal legislature ; it cannot therefore be said to be in *pari materia* with any other statute. The statutes passed by legislatures under other governments have no influence or control over this ; and its construction is not controlled by them. It is to be construed by itself. It is repugnant to the provisions of no statute enacted by the same government ; and if repugnant to statutes under another government, it in nowise affects this. Other governments have no power to enact statutes which can limit or control the absolute, supreme and sovereign power of this government. Congress has not in this attempted to repeal or interfere with the statutes of the State of New York on the subject of usury, and have not the direct power to do so, should they attempt it. Nor has congress, either in terms or by implication, adopted the statute law of New York, or its penalties, on this subject. With its own unrestrained power to legislate on this subject, it has matured its own independent project of governmental agencies, which stands alone as a single, separate and distinct system of banking and agency, unaided by, and disconnected

with, other systems. It has conferred benefits upon the corporators themselves and perhaps upon the public; and in consideration thereof has demanded and received in return, from these agencies, therefor, various and onerous duties, aids, securities and credits to the government, and from the institutions so authorized. These are to be regarded as fair and equal equivalents, with mutual considerations passing from the one to the other. The government was authorized to employ them as depositories of the public moneys, and as financial agents of the government, and their supervision was committed to an agent of the federal government. The institutions were bound to deposit securities for the government's protection, and also to keep deposits and accumulate a surplus fund for that purpose.

It has, in this system, permitted the institutions to receive a fixed and fair equivalent, to be received for loans and discounts to individuals, of money upon notes and bills of exchange, and at the same time has thrown its protecting influences over such individuals to prevent abuse and oppression (as it must be supposed) by adequate penalties to be inflicted for violations of the statute. In other words, for the value to the corporators of chartered rights and privileges conferred, the government imposed certain burthens upon these agencies as a condition to the grant; and the conferring and receiving of these reciprocal benefits, with these duties and burthens and subject to its penalties, are the terms, and these only, of the compact between the government and the corporators in these institutions. "No other burthens are annexed to the enjoyment of the rights and privileges conferred by this act of congress." (3 *Wallace*, 583.)

To this extent, that is as to the express provisions of this act, the federal government has exercised its sovereign power over the law of these institutions; and to this extent its power, and its enactment, is exclusive. The

First National Bank of Whitehall *v.* Lamb.

State law penalties have no application to this system. True, the statute has subjected these institutions to the judicatories of the State, so that as to the form of the action and the proceeding in its courts, the State system of practice is, and must be adopted. In this particular, the federal government has not expressly asserted its own power, nor is it necessary here to inquire whether the courts of the general and state governments have concurrent jurisdiction; but it follows that in whatever court the action may be pending, the law prescribed in the express provisions of the act of congress is sovereign and exclusive; and it must be so declared.

If the view we have taken of this case is a sound exposition of the law of congress, it is not necessary to discuss another and a distinct question, greatly dwelt upon, on the argument, as to the right of the state governments to tax these banks or their stockholders, and to whom and to what extent the power of taxation belongs; whether congress and the states possess concurrent authority on the subject; whether if the power if exercised by congress is paramount; and whether by its exercise it is then exclusive; or if, when congress omits or withholds its right to act in that regard, the states can exercise full power to tax, and as it is said, to destroy thereby; we are not called upon to declare. This greatly vexed question of the taxing power is distinct from the question before us, and depends in some respects upon an entirely different basis or provision of constitutional law.

The result of our view of the law of these cases is, that the judgments must be affirmed.

[WARREN GENERAL TERM, July 12, 1870. *Rosekrans, Potter, Bockes* and *James,* Justices.]