RENFROE *et al. vs.* COLQUITT, governor.

1. Where a declaration alleged that the state treasurer, who became so and gave bond in 1877, had himself received and allowed others to receive money from certain banks for the use of funds of the state deposited by him, apparently without the approval of the governor, and without any contract having been made by the governor and treasurer with the bank for the use of such funds, this did not set out a case which gave a right of recovery on behalf of the state against the treasurer and the sureties on his official bond for money so made. Money so made or received did not come into the hands of the treasurer by virtue of his office.

(a.) If the facts stated be true, they would constitute a use of funds of the state by the treasurer and others by his permission, for which he incurred a penalty under paragraph 11 of section 97 of the Code, which was to be collected in the manner pointed out in section 97 (b).

(b.) Money received by an officer by virtue of his office is money

which that officer received under the law of his office, and not in violation thereof.

(c.) The joint resolution of 1871 was a legislative declaration as to the law concerning the taking of interest by the treasurer, which the courts will regard, unless it has been subsequently modified or repealed. This was done by the act of 1876.

2. Section 97, paragraph 11, of the Code prohibits the treasurer from using the funds of the state or allowing others to do so; and for every violation of this section, the treasurer is liable to the state in the sum of five hundred dollars, as a penalty, or a forfeiture of his salary; but there is no provision that the sureties on his official bond are to be made liable for this penalty.

(a.) Forfeitures are not favored, and courts incline against them. When a statute may be construed so as to give a penalty, and also so as to withhold the penalty, it will be given the latter construction; and where a statute creates a new offense and provides a penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes.

(b.) Pleadings will be construed most strongly against the pleader.

JACKSON, C. J., dissented.

March 30, 1885.

Officers. Treasurer. State. Principal and Surety. Bonds. Forfeitures. Before Judge HAMMOND. Fulton Superior Court. September Term, 1884.

Alfred H. Colquitt, governor, for the use of the state of Georgia, brought suit against J. W. Renfroe and the sureties on his bond as treasurer of the state. After alleging the election of Renfroe in 1877, the giving of the bond and his taking charge of the office, the declaration alleged as follows:

"Petitioner states that said Renfroe, whilst holding said office and acting under said bond, to-wit, at divers times between the first of April, 1877, and the 15th day of February, 1879, did collect, in his official capacity, from different banks and individuals in the city of Atlanta, in the said state, large sums of money as interest and commissions for the use, by said banks and others, of the public money of said state, in the hands of said Renfroe, as treasurer as aforesaid, and did, during the time last aforesaid, in violation of law and of the obligations of the said bond, appropriate the same in part to his own private use and benefit, and did allow one John W. Murphy and one

Vincent R. Tommey to appropriate the same in part to their own private use and benefit respectively, the amount collected by the said Renfroe, as treasurer as aforesaid, during the period last aforesaid, as commissions and interest for the use of the money of the state as aforesaid, being the sum of seventeen thousand seven hundred and sixty-one dollars and forty-one cents, of which he unlawfully appropriated to himself, and used as his own, the sum of nine thousand eight hundred and fifty-five dollars and nineteen cents, and allowed the said Murphy and the said Tommey to appropriate the rest of said sum to their own private use and benefit respectively, the said Murphy receiving five thousand eight hundred and seventy-five dollars and nine cents, and the said Tommey three thousand and thirty-one dollars and twenty-one cents; and petitioner avers that the said Renfroe, treasurer as aforesaid, has failed to account, as by his said bond he had agreed to do, for the said sum of $17,731.49, money collected as aforesaid, and which your petitioner avers was the money of the said state, or for any part thereof, but has wholly failed and refused to render any account thereof to said state, or to any of its authorized officers or agents. By reason whereof the said defendants have become liable to said state on their said bond,'' etc.

The bond sued on contained the following provision :

'' Whereas, the above bound J. W. Renfroe was, on the sixteenth day of January, 1877; elected by the general assembly of this state treasurer of Georgia; now, if the said J. W. Renfroe shall faithfully discharge, execute and perform all and singular the duties of him required, and which may be required by the constitution and laws, and will faithfully account for and pay over all moneys that may be received of him from time to time by virtue of his office, and will safely deliver to his successor all books, moneys, vouchers, accounts and effects whatsoever belonging to his said office, then the above obligation shall be null and void; otherwise to remain of full force and virtue.''

By amendment, a bill of particulars, showing dates and amounts of payments, and by whom and to whom paid, was set out. A further amendment was made, alleging that '' the defendants are indebted the sum of thirty-five thousand dollars penalties, as now charged in said petition,'' and then proceeding as follows :

'' Plaintiff charges that the said defendants are liable for and indebted to the plaintiff the sum of five hundred dollars as a penalty for each and every time the said Renfroe received and used himself, or allowed others to receive and use, the funds of the state in his

hands, or received interest or commissions thereon, as set forth in the former amendments to plaintiff's petition."

Defendants demurred to the declaration, on the ground, among others, that no cause of action was set out, either in the original declaration or in the amendments, and because the declaration showed on its face that Colquitt, governor, for the use of the state, had no title to or interest in the moneys sued for. The demurrer was overruled, and defendants excepted.

HENRY JACKSON; JAMES K. HINES, for plaintiffs in error.

CLIFFORD ANDERSON, attorney general; GEO. N. LESTER, for defendant.

BLANDFORD, Justice.

This was an action brought on the bond of the treasurer of this state to recover of the treasurer and his sureties certain sums of money, which it is alleged had been received by and paid to him and others for the use of certain moneys of the state, deposited by him in certain banks. To this declaration defendants demurred, because it set forth no cause of action against them. The declaration was amended by adding a further breach of the bond as to penalties incurred by the treasurer. The declaration, as amended, was then demurred to. The court overruled the demurrer, and defendants excepted, and bring the case here for review.

In order to ascertain whether there is any liability of the plaintiffs in error upon the bond, under the allegations in the declaration, it will be necessary to determine what was the law of this state, in 1877, when the bond sued on was made.

1. A careful research has failed to discover any judicial opinion as to the liability of the state treasurer for moneys received by him on account of deposits of state funds by the courts of this state up to this time. But we have a

legislative declaration upon this subject, in a joint resolution passed by the general assembly of this state, which was approved December 8th, 1871, which resolution is as follows:

"WHEREAS, It has not been customary to require the state treasurer to pay into the treasury interest on deposits of state funds: be it

*Resolved,* That the treasurer of the state shall not be held liable for any such interest. . . . "

This is not only an opinion of the liability of the state treasurer as to interest received by him by reason of deposits of state funds, as expressed in the preamble or title to the resolution, but it is a declaration as to the law, having the force of law, as contained in the resolution itself; and the courts will be bound to hold it to be law, unless it has been subsequently modified or repealed. Has it been repealed or modified by any subsequent legislation? On the 25th of February, 1876, the legislaure passed an act " To amend the laws of this state for the protection of the state treasury, and to define the obligation pertaining to the office of treasurer, and to prescribe his duties, and for other purposes." Acts of 1876, page 126; Code, §97, and paragraphs and sub-sections thereto. This act is a clear repeal of the joint resolution of 1871, and prescribes a new rule for the duties and liabilities of the state treasurer.

Paragraph 10 of Sec. 97 of the Code provides that the treasurer " may, with the approval of the governor, deposit all funds set apart for the purpose of education, or any other purpose, not required for immediate use, in any chartered bank of this state, subject to his draft as treasurer, and, with the governor, make such contract with said bank for the use of such funds as may be beneficial to the state."

The 11th paragraph to this section provides, " The treasurer shall not, under any circumstances, use himself, or allow others to use, the funds of the state in his hands, and for every violation of this section he is liable to the state for the sum of five hundred dollars as a penalty, or a for-

feiture of his salary, if said forfeiture will pay the penalty incurred."

Section 97 (b) of the Code authorizes the governor to issue a *fi. fa. instanter* against the treasurer and his sureties for the amount due the state by the treasurer, with the penalties and costs.

Thus the law stood when Treasurer Renfroe assumed the duties and office of treasurer of this state. The declaration no where alleges that the treasurer used or misapplied any funds due the state on account of any deposits made by the treasurer, with the approval of the governor, or that he received from any bank any sum of money for the use of funds so deposited; but the plain conclusion is, from the declaration in this case, that the treasurer had himself received and allowed others to receive money from certain banks for the use of funds of the state deposited by him without the approval of the governor, and without any contract having been made by the governor and treasurer with the bank for the use of such funds. If this be so, it is a use of the funds of the state by the treasurer, and others by his permission, for which he incurred a penalty, under paragraph 11, of section 97, which was to be collected in the manner pointed out in section 97(b) of the Code. There is no provision in this act for the collection from the treasurer and his sureties on his bond of any money made by the treasurer, or others by his permission, on account of the use of the funds of the state; penalties are imposed for this use, and they may be collected in the manner pointed out by the statute. Can the money made or received by the treasurer, or allowed to be made by others by the use of the money of the state, be said to have come into his hands by virtue of his office? Money received by an officer, by virtue of his office, is money which that officer receives under the law of his office, not in violation of the law of his office; in right of his office, not in wrong. In this case, the money received or made was by a wrongful use of the funds of the state;

there was no virtue in it; it was wrongful, and a penalty was imposed for such wrong.   There is no allegation that the treasurer had failed to perform the duties of his office; that he had misapplied or used the funds of the state; and that he had failed to account for and pay over any money that he had received by virtue of his office, whereby he became liable to the state; but the breach assigned is that the treasurer received himself, and permitted others to receive, from certain banks certain sums of money for and on account of the deposit of the funds of the state in those banks, it not being alleged that these deposits had been made under a contract between the banks and the treasurer, with the the governor; so that this assignment is equivalent to alleging that the treasurer had received this money and allowed others to receive money by the use of the funds of the state himself, and allowing others to use such funds.   For such money so received by the treasurer there can be no recovery on his official bond against him and his securities, and the following authorities are referred to, to sustain the positions laid down: Rensellaer Co. *vs.* Bates, 17 N. Y., 242; New York *vs.* Pennock, 60 N. Y., 426; 7 Barn. & Cres., 493; 10 Mo., 560; 20 Ohio, 330; 29 Ind., 294; 43 Wis., 81; 15 John., 269; 19 Wend., 283; 37 Wis., 45; 63 Mo., 562; 18 *Ga.*, 48; 20 *Id.*, 103; 47 *Id.*, 642.

2.   The next breach assigned is as to the penalties.   The declaration is quite meager in this respect; it merely alleges that the treasurer had incurred penalties in the sum of 35,000 dollars, without stating when, where, on what account.   Code, §97, par. 11, prohibits the treasurer from using the funds of the state, or allowing others to do so; and for every violation of this section he is liable to the state in the sum of five hundred dollars as a penalty, or a forfeiture of his salary, etc.   Under this section, the penalty is visited upon the treasurer.   There is no hint even that his sureties on his official bond are to be made liable for this

penalty.  They are liable for his proper accounting for all funds that shall come to his hand by virtue of his office.

Forfeitures are not favored in the law; courts always incline against them.  15 Wallace, 156.  Where a statute may be construed so as to give a penalty, and also so as to withhold the penalty, it will be given that construction which will prevent the penalty.  Vattel, 20 Rule of Construction.  This act may be construed so as not to apply the penalties to the sureties, and it will receive that construction.  Where a statute creates a new offense and announces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes.  3 Hill, 38; 57 Barb., 429; 91 U. S., 35 (1 Otto).  The declaration fails to state a case against the principal in this bond wherein he is liable for penalties under the statute.

Pleadings will be construed most strongly against the pleader; therefore, where, from every legal intendment, there is no right of recovery against the defendant to be drawn and concluded from the plaintiff's declaration, the pleadings are defective, and a demurrer thereto for such cause should be sustained

Judgment reversed

HALL, Justice, concurred, but furnished no written opinion.

JACKSON, Chief Justice, dissenting.

I am wholly unable to concur with my associates in the judgment rendered, that the treasurer and his sureties on the bond sued on are not liable to the state for the interest made by the treasurer and used by himself and two of his sureties for their private profit.  The law of the case is to be found in the statutes of this state, and there is no need of going elsewhere to determine that law.  To my mind it is clear; and a few words will show the reasons which make it clear to me.

It is not a criminal case. It is not a question of *mala fides* in a civil case. It is a naked question of liability to pay money on a contract under seal made by a public officer and his sureties. Did the officer break the contract he made with the state when he put his signature to this bond, and did his sureties agree to make good that breach, when they signed the same bond? These are questions, and the only questions, arising on this demurrer, and both are answered in the affirmative by the facts alleged in the declaration and by the law prescribed by the statutes of the state.

The bond is set out in the declaration and speaks for itself. The breaches thereof, which the declaration alleges, or can allege, by amendment, are the failure " faithfully to discharge, execute and perform all and singular the duties of him required, and which may be required by the constitution and laws;" and the failure faithfully to " account for and pay over all moneys that may be received of him from time to time by virtue of his office;" and the failure to " safely deliver to his successor all books, moneys, vouchers, accounts and effects whatsoever belonging to his said office." The allegation further is that the treasurer " did collect, in his official capacity, from different banks and individuals in the city of Atlanta, in said state, large sums of money, as interest and commissions for the use by said banks and others of the public money of said state, in the hands of said Renfroe, as treasurer as aforesaid, and did, in violation of law and of the obligations of said bond, appropriate the same in part to his own private use and benefit, and did allow one John W. Murphy and one Vincent R. Tommey to appropriate the same in part to their own private use and benefit respectively;" and then the declaration sets out the amount Renfroe used for himself, and the amount which each of the others appropriated to their respective private use by his sanction; and afterwards, appended to the declaration and made part thereof, is a bill of particulars itemizing the several sums so used by

the treasurer, with the dates thereof, in sundry banks, some of which were state depositories; and further, it alleges that the state is entitled to recover upon the bond from principal and sureties the money so used unlawfully and misappropriated by the treasurer, and also penalties therefor.

On these facts, alleged in the declaration and admitted by the demurrer, I am of the opinion that the state is entitled to recover, every condition of the bond having been clearly broken by this use of the public money by the treasurer.

The bond was broken, in that the treasurer did not " faithfully discharge the duties required of him by law." The act of 1876 specifies those duties. Among other things, it enacts that " he may, with the approval of the governor, deposit all funds set apart for the purpose of education, or any other purpose not required for immediate use, in any chartered bank of this state, subject to his draft as treasurer, and, with the governor, make such contract with said bank for the use of such funds as may be beneficial to the state." Acts of 1876, sec. XII., subdivision 10, pp. 130, 131; Code of Georgia, §97, sub-sec. 10.

Did the treasurer " faithfully discharge the duty required of him " by law, when, instead of making the deposit so as to be beneficial to the state, he made it so as to benefit himself and two other individuals? Clearly he violated his bond, when, instead of making the contract with the banks to pay interest to the state, he made it to pay interest to himself and two other favored persons. It is vain to reply that the governor, under the law above cited, must help him make the contract for the benefit of the state, in order to make the interest for the state. Was it not the duty of the treasurer, in whose possession the money was placed by law, to notify the governor that he had on hand funds not needed for immediate use, and that they could be deposited so as to be beneficial to the state in drawing interest thereon? And did he faithfully discharge his duty as treasurer, when, instead of notifying the governor and

having his co-operation, he made the contract and used the fund for his own benefit? The failure to notify the governor, and the making the contract alone, and the appropriation of the interest to his own use and that of others, amounts to a violation of the obligaton of the bond faithfully to discharge this duty required by law; and therein the bond was broken, and on this breach the state ought to recover.

So with the second condition of this bond. It is as clearly broken, under the allegations of fact and the law applied thereto. That second condition is "faithfully to account for and pay over all moneys that may be received of him from time to time by virtue of his office." This money was received by him by virtue of his office. As treasurer he received the principal. As treasurer he deposited it with the banks. It was subject to his check as treasurer, and the bill of particulars so distinctly states. Officially the deposit was made. Officially interest was agreed upon for the use of the money deposited; and by every rule of law, common sense and equity, that interest belonged to the state. The treasurer got it *virtute officii;* and when he received it, he received it as trustee of the state. By virtue of his office, he was the custodian and trustee of this fund; and all that he made out of it belonged to the *cestui que trust.* His duty, his official duty, was to place it in the treasury for the state, his *cestui que trust*, and to account for it, if instead of putting it there to the credit of the state, he and others by his assent pocketed it.

I am aware that the books make a nice distinction between funds acquired *colore officii* and those obtained *virtute officii;* but I know of no case where, under the facts here disclosed and law so plain as the act of 1876, it has been held that, on facts and law at all analogous, the money could not be recovered out of the *misfeasant* and those who indorsed his faithful discharge of duty. It seems to me that the obligation, the official obligation of the treas-

urer, under the act of 1876 *supra,* is not only to account for such money of the state as came into his hands from taxation and other sources of revenue, but for such interest as he actually makes on that money for its loan or deposit as treasurer; and if such be his official obligation, it binds his sureties as well as himself. They obligated themselves to make good any default of his in not paying over all that belonged to the state from any and every source.

The third and last condition of the bond makes this stronger. It is that he will " safely deliver to his successor all books, moneys, vouchers, accounts and effects whatsoever belonging to his said office." Does not this sweeping clause embrace every cent that *ex equo et bono* belongs to the state? If the argument above, under the second breach, be sound, then the word " moneys " would apparently include this interest; but the subsequent words, " accounts " and " effects," leave the position so strong as to be unassailable. Suppose the treasurer had in his office an account *ex equo et bono*—an equitable demand— against any bank or private person, would he not be bound by this law and this condition or obligation in his bond to turn it over to his successor; and failing so to do, would he and his sureties not be bound to pay its value? Would it not be one of the effects of the state belonging to his office? If such be the law, in case he had such a claim or demand on others, is he, and are his sureties to be relieved from paying the claim because it is on him and two of his sureties? Does the fact that the claim is upon him make it a claim not " belonging to his said office ?" It is an equitable claim, an account or effect belonging to his office, owed by him to the state, and which he is bound to deliver to his successor. The act of 1876 was passed at a time when the state was aroused in respect to defalcations of the person then treasurer; and the general assembly made this broad and sweeping law to cover every defalcation of every sort, and to secure, beyond peradventure, all her

moneys, accounts and effects of every sort. " Whatsoever" is the broad word that enlarges the scope of liability and makes it expansive, I had almost said, as the universe. The great Maker of the universe and Redeemer of man used a kindred word in range and compass when he said, " God so loved the world that he gave his only begotten Son to die, that whosoever believeth on him should not perish but have everlasting life;" and when, in the very last chapter of the great law book, he wrote, " And whosoever will, let him take the water of life freely."

I think, too, that liability for the breaches of this bond covers the penalties prescribed in the event that the treasurer appropriated any of the money entrusted to him as the officer of the people and the custodian of their funds to his own use. The act of 1876 also covers all fours this position. The eleventh subdivision of the twelfth section of that act is as follows: " The treasurer shall not, under any circumstances, use himself, or allow others to use, the funds of the state in his hands; and for every violation of this section, he is liable to the state for the sum of five hundred dollars as a penalty, or a forfeiture of his salary, if such forfeiture will pay the penalty incurred." Page 131, subdivision 11, acts of 1876; Code, §97, sub-sec. 11.

The fourteenth section of the same act is as follows:

" That if the treasurer fails to perform the duties of his office, misapplies or uses the funds of the state, fails to account for and pay over any moneys that he may have, received by virtue of his office, whereby he becomes liable to the state, it shall not be necessary to sue his official bond, but the governor is hereby authorized to issue a *fi. fa. instanter* against the treasurer and his securities for the amount due the state by the treasurer, with the penalties and costs." . . . Acts of 1876, p. 132; Code, §97 (b).

Unquestionably this fixes the liability of the sureties on this bond for penalties. And if this bond had been an

official bond, who can contend, with any sort of confidence, that the governor could not have issued execution *instanter* thereon for these penalties, and recover for the state by levy and sale? But the bond is not an official, but a voluntary bond, as has been adjudicated by this court. Therefore the remedy of the state is by suit on the bond. See 66 *Ga.*, 408; 1 Kelly, 580, 582.

The only effect of these rulings is, that the state has no summary remedy on the bond, but is remitted to the usual suit at law on the bond. The bond is as good, but the remedy is different. Therefore these sureties are liable to the full extent in this suit as they would have been had the execution been issued; and their liability covers all that would have been covered had it been an official bond, and as such, had execution been issued *instanter*.

The constitution of 1877, art. 5, sec. 2, par. 5, codified in section 5124, makes fundamental what the act of 1876, section 12, sub-sec. 11, p. 131, Code, §97, sub-sec. 11, had previously declared to be legislative law. Both entered into and made part of this bond, as its face shows and the statute requires. Code, §90, sub-sec. 1. It is no answer to this liability on this bond for penalties to say that the law generally is, that sureties are not responsible for penalties or forfeitures, because, in this case, the statute—the law of this case—expressly declares that they shall be liable. Nor is it any reply to lay down the general principle that, where a statute prescribes a remedy to enforce a penalty, no other can be resorted to—the law generally not favoring penalties, because that applies where the remedy is of force. Here the only remedy prescribed by the statute is on a statutory bond, and this bond was held, in 66 *Ga.*, *supra*, in a case between these same parties, to be not a statutory, but a voluntary bond. Therefore the statute gives no remedy on this bond, but, by the ruling in 1 Kelly, *supra*, followed by several other following cases, it is ruled that the state is remanded to her suit at law on the common law bond.

On the general liability of principal and sureties on this bond, see also the statutory provisions in the Code, §160, which declares that "every official bond executed under this Code is obligatory on the principal and sureties thereon for any breach of the condition during the time the officer continues in office, or discharges any of the duties thereof, for any breach by a deputy, although not expressed, unless otherwise declared by law, for the faithful discharge of any duties which may be required of such officer by any law passed subsequently to the execution of such bond, although no such condition is expressed therein, (and) for the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office, as by his failure to perform, or by the improper or neglectful performance of those duties imposed by law."

These provisions, in my judgment, make the treasurer and sureties liable on this bond for any wrongful act done under color of his office. Was not this act wrongful? When he could have made the interest for the state, was it right to make it for himself? If not done officially, as I think it was, was it not done by color of his office? The declaration and bill of particulars show it beyond possibility of cavil. In bank depositories of the public funds, he deposits those funds and pockets the interest. By virtue of his office, he makes the deposit; and by color of it, to put it weakest, he makes interest on the deposit, and he and two others appropriate that interest to their own use. These provisions of law also make the treasurer and sureties liable on this bond by his failure to make the interest for the state, and by the improper and neglectful performance of his duty when he made the deposit and absorbed the profits of that deposit instead of making entry of those profits for the state in a durable book under section 97, sub-section 2, of the Code.

In law the act was not the less wrongful, improper and neglectful, if done in ignorance of the act of 1876, and

under the idea that the joint resolution of 1871 was still in force, which disclaimed any claim of the state to interest in such cases. The act of 1876 repealed that resolution, and it was the duty of the treasurer to know. On a criminal charge, as on his impeachment, the fact that Mr. Renfroe was a member of the legislature of 1871, and was ignorant of the subsequent law, may have thrown light on his intent to do wrong, and thereby have been considered on that great issue before the senate, though even in criminal cases ignorance of the law is generally no excuse; but on a civil case for money growing out of his office, ignorance of all the law pertaining to that office can be no sort of legal defence to the suit.

Thus regarding the case as controlled by the statutes of the state, I deem it unnecessary to examine critically the common law of England or the adjudications thereon in the United States or any of the American states. I add simply that the criminal statute of 1878, making such conduct felonious, expressly provides that the civil recovery shall not be affected thereby Code, section 4425(b). That act, however, was passed after this interest was made and received, and could hardly affect the result here, even if that provision was not in it. Appending hereto the citations of the attorney general and Mr. G. N. Lester, for the state, of authorities outside of our state, and some of our own, as they may throw further light on a broad view of the entire subject, I close what a sense of duty to the state required me to say, in order that views of law and construction of statutes damaging to the public, in my judgment, might not be cited hereafter as carrying, by a unanimous judgment of this bench, the force of a legislative enactment. Vol. 4 B., Myer's Fed. Dec., Secs. 380, 382, 396, 397, 405, 407; 10 Otto 8; 56 *Ga.*, 290; 60 *Id.*, 296, 318; Williams Ext'rs, 1844; 6 Lansing, p. 33; 10 Central Law Journal, p. 34; Brandt on Suretyship, 456, 455; 17 Ala., 806; 46 Pa. St., 452, 209; 2 Gratt., Va., 134; 53 Ind., 331.