29166, 29198. PUCKETT, executrix, *v.* CHAMBERS, clerk, *et al.;* and *vice versa.*

DECIDED DECEMBER 4, 1941. REHEARING DENIED DECEMBER 17, 1941.

*James A. Branch, Thomas B. Branch Jr.,* for plaintiffs in error.
*Spalding, Sibley, Troutman & Brock, E. H. Sheats, W. S. Northcutt,* contra.

FELTON, J. The Fulton National Bank of Atlanta filed a bill for interpleader in Fulton superior court against Mrs. O. H. Puckett, individually and as executrix of O. H. Puckett, and Hewitt W. Chambers, as clerk of the municipal court of Atlanta, Fulton section. Fulton County was made a party by amendment. Under an order on the interpleader the bank deposited in court the proceeds of certain savings accounts on deposit in the bank in the name of O. H. Puckett, clerk. The three defendants set up their respective claims to the fund. The court tried the case without a jury and awarded the custody of the fund to Chambers, as clerk of the civil court of Fulton County, and ordered that he hold the same in his official capacity until it was disposed of in a manner prescribed by law. Mrs. Puckett, individually and as executrix of her husband's estate, excepted to the order overruling the motion for new trial filed by her as an individual and as executrix. By cross-bill Chambers excepted to the sustaining of a special demurrer filed by Mrs. Puckett to his pleadings.

O. H. Puckett, as clerk of the municipal court of Atlanta, Fulton section, received various sums of money paid into court by parties litigant, including funds belonging to the litigants, and court costs. The moneys applicable to costs were paid into the treasury of Fulton County at regular weekly intervals. The amounts remaining were deposited by the clerk in a savings account. As interest was earned he withdrew it and put it into a separate savings account. Such is the account in question here— the interest on moneys deposited with the clerk as clerk of the court, no part of which was costs of court. All demands which were made upon Mr. Puckett by any party litigant for the payment of any money so deposited with him have been met. The statement of the various accounts shows the amounts paid to Mr. Puckett, the date of the payment and the name of the party entitled to receive the money deposited. It was stipulated by the parties that no litigant depositors could show any claim to the interest in the account here involved. Both the principal account and the interest account were deposited in the bank, separately, in the name of "O. H. Puckett, clerk." O. H. Puckett left a will in which he appointed his wife, Mrs. O. H. Puckett, as executrix. It was probated in solemn form and Mrs. Puckett qualified as executrix on March 19, 1937. The executrix and Hewitt W. Chambers, as clerk of the municipal court of Atlanta, Fulton section, demanded that the bank turn over to each respectively the fund involved here, as a result of which demands the bill for interpleader was filed.

1. The question as to who is entitled to the possession of the interest on the amounts of principal deposited with the deceased clerk depends on the character of the original deposits of principal, upon the capacity in which the clerk acted in receiving and holding them, upon where, in contemplation of law, the absolute title to the money rested, and upon the liability of the clerk for the funds so held. The act creating the municipal court of Atlanta fixed the duties of its clerk as being the same as those of superior court clerks unless therein stated to be different. Ga. L. 1913, pp. 145, 155, § 23. The Code, § 24-2722, provides: "If any such clerks receive any money on any suit or judgment from their courts, or otherwise, and do not faithfully account for it, they are liable to rule as sheriffs are, and they and their sureties are likewise liable

on their official bonds." It is hardly necessary to attempt to demonstrate the legality or practical advantage of the payment of money into court. When it is paid in it necessarily must be paid to some officer. It is common practice to pay it to the clerk who, under the Code section just cited, seems to be the officer contemplated by the law as the proper officer. It follows that payment of money into court is paid to the clerk, in the capacity of clerk and by virtue of his office, who is made accountable for moneys coming into his hands from any source, as sheriffs are. The question now arises as to what were the clerk's rights and liabilities with reference to the deposits in which he had no personal interest. Under the law the clerk, as regards such deposits, is a statutory receiver, and occupies a position similar to a receiver in equity. His duties are to hold the money for the court, and pay it out on the order of the court to those entitled thereto. The possession is that of bailee for reward, his salary being his reward for all duties assumed in taking office.

In *Ricks* v. *Broyles, 78 Ga.* 610, 613 (3 S. E. 772, 6 Am. St. R. 280), the Supreme Court, through Justice Bleckley, said: "1. When money awaiting the result of litigation is in the possession of a receiver at the place of permanent custody, and he has no further duty in respect to it but that of preservation, it is already in court, the receiver being the hand of the court to hold it, and he can not pay it out, or part with his actual custody of it by depositing it in a bank, or otherwise, save at his own risk, without some order, leave or direction authorizing him so to dispose of it. He is for the court that appointed him as much a final custodian as is the Bank of England for the court of chancery. His poundage or commissions are compensation for his risk, which is that of an official bailee for reward; and while he may not be bound for more than ordinary diligence, his diligence is to be exercised in keeping the money, not in putting it out on deposit, either general or special. A general deposit in bank is a loan, and that the loan was made in good faith and entered to his credit in bank as receiver, will not avail him. Though without any moral fault, or any legal fault but that of parting with the money, he is liable to make good the loss resulting from his banker's insolvency. 2. The case of *Morgan* vs. *Hardee, 71 Ga.* 736, is no adjudication by this court that a receiver has a right to

substitute the good credit of a banker for his own responsibility as ultimate custodian. To rule, as that case does, that there was no such material error of law as to require a new trial, is not to rule that there was no error of law committed by the court below, but rather that under the special facts it was unnecessary to probe the alleged errors to the bottom. *Morgan* vs. *Hardee* is not to be extended beyond its own facts; it is no interpretation of any general principle or rule of law. *Phillips* vs. *Lamar, 27 Ga.* 228, settles nothing as to receivers, but only as to sheriffs, receivers being spoken of merely arguendo by the judge delivering the opinion. 3. High on Receivers, Kerr on Receivers, Lewin on Trusts, Perry on Trusts, Story on Bailments and on Agency, as cited in the argument, may be conceded to apply in Georgia as elsewhere to receivers, until the fund reaches its final form and there is no duty left but to hold it for the court at the place of final custody. Then it is in court. The court in Georgia has no official banker, and no bank but the receiver himself. He is its Bank of England, and the Bank of England would not be excused by depositing with John H. James, were his house in London instead of Atlanta. While the fund is passing down the brooks and rivers, it may flow along the usual channels of general business, but when it reaches the ocean, it must stop, unless the court orders a refluent current. There is no beyond. The Code contemplates that a receiver, who merely has possession and holds, shall hold subject to the direction of the court. § 3149. And the discretion of all trustees in the use of money is, by § 2330 of the Code, considerably narrowed. *Brown* v. *Wright, 39 Ga.* 96. To invest even in State bonds, a receiver must have orders. Code, § 275."

It will be noted from the above case that the receiver is not absolutely liable for the money in any event. In *Phillips* v. *Lamar, 27 Ga.* 228 (73 Am. D. 731), it was held that a sheriff was liable for money officially in his hands which was lost because he deposited it in a bank on general deposit, or loaned it to the bank. It was stated in the opinion in that case that, after having collected money under legal process, nothing but inevitable accident can relieve the sheriff from liability. We do not know what the court meant by inevitable accident. Whatever it meant, it did not mean absolute liability. We have been able to find no statute or decision which makes a bailee of any kind absolutely liable in this

State. Not even common carriers of freight are absolutely liable. In *Gilmore* v. *Moore,* 30 *Ga.* 628, the sheriff was held liable for money stolen from a trunk under his bed while he was asleep, but that is a far cry from a holding that he was absolutely liable. It was nothing more than a holding that a sound sleeper was negligent in so attempting to safeguard cash. In the last sentence of the opinion the court said: "It was the least he could have done to keep an iron safe, or some secure place, for the preservation and protection of money and the valuable papers constantly in his custody"; plainly indicative that the sheriff's duty was that of ordinary care. The decisions holding officers liable for the loss of trust funds arising from their making general deposits thereof in banks are by no means authority for the proposition that they are absolutely liable for the money entrusted to them. They have no right to loan trust money to any one, and a general deposit of the money, being a loan, is a plain violation of duty, no matter what diligence is exercised in selecting the depository. *Wiley* v. *Sparta,* 154 *Ga.* 1 (1c) (114 S. E. 45, 25 A. L. R. 1342). The ruling in *Traylor* v. *Gormley,* 177 *Ga.* 185 (169 S. E. 850) that a county did not have a preferred claim against a defunct bank by reason of the fact that the clerk of the superior court deposited county funds in the designated depository in his individual name when he should have deposited them to the credit of the county does not mean that because the clerk deposited the funds contrary to law they became his individual property.

The instant case is not one for damages arising from a failure to account, such as *Donaldson* v. *Walker,* 35 *Ga. App.* 224 (132 S. E. 649). Neither the rulings in *Lamb* v. *Dart,* 108 *Ga.* 602 (34 S. E. 160), nor in any other Georgia case to which our attention has been called are to the effect that the liability of a public officer for funds in his hands is absolute, even if the discussion of the liability of the officer in those cases, beyond the facts of the cases, are not regarded as obiter dicta. It can not reasonably be asserted that the principal sums, from which the interest here involved arose, did not come to the officer by virtue of his office. Nor can it be successfully contended that the officer was absolutely liable in every event for the money. It therefore necessarily follows that the interest earned on the money did not and does not belong to the deceased clerk or his personal representative, but

attaches to and becomes a part of the principal. The fact that the real owners of the money can not sustain a claim to it is no concern to the executrix because the money does not belong to her and never can. Furthermore, the purpose and intent of the law in cases of such deposits with a clerk of the court as we have here is to have the money always on hand, in the possession of the clerk, so that it may be instantly disbursed on court order. If Mrs. Puckett retained the deposit and removed her residence to a distant State, and the bond company withdrew from the State, the court would be unable to control the money as expeditiously as the law intends, to say the least of it. In a case such as this, with small claims involved, it would be impractical from the standpoint of expense alone to pursue the funds.

The case of *Renfroe* v. *Colquitt, 74 Ga.* 618, has caused us more trouble than any case cited. We are of the opinion that so much of the opinion as rules that the treasurer's earning of interest on State money was not receiving money by virtue of his office was obiter, as being entirely unnecessary to a decision of that case. Even if that part of the decision is not obiter it would not control this case because it nowhere appears in this case that the deceased clerk ever used any of the interest earned on the deposits as his own, or that he ever intended to. We must indulge in the conclusive presumption, under the admitted facts, that he intended not to use the interest as his own. The controlling ruling in the *Renfroe* case, in our judgment, is that by a joint resolution, on December 8, 1871, the General Assembly resolved that the treasurer of the State should not be held liable for interest on deposits of State funds. On February 25, 1876, the General Assembly passed an act (Ga. L. 1876, pp. 126, 131) providing that "the treasurer shall not, under any circumstances, use himself, or allow others to use, the funds of the State in his hands, and for every violation of this section he is liable to the State for the sum of five hundred dollars as a penalty, or a forfeiture of his salary, if such forfeiture will pay the penalty incurred." Code, § 40-1101 (10). This new statute provided an exclusive remedy, and the court held that where a statute creates a new offense and announces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes.

Counsel for both parties to this contest agree on the proposition

laid down in Ruling Case Law: "At common law the liability of clerks of courts for moneys coming into their hands in their official capacity is imposed by the law of bailment, and unless such liability is increased by constitutional or statutory requirements, they are not held responsible for the loss of such funds occurring without their fault. . . On the question of liability of clerks of courts and other public officers for interest accruing on funds coming into their hands by virtue of their office, the opinions are conflicting in some particulars, notably the nature of the officer's title to such funds, but the ruling principle holds such interest a part of the fund, and determines his liability according to his title. In jurisdictions where a clerk is held absolutely liable for money received by virtue of his office, title to such funds is said to be in the officer, and the relation that of debtor and creditor, and he is not liable to account for interest which he may receive thereon." 5 R. C. L. 630; Am. & E. Ann. Cas. 389; 91 Am. St. R. 527. We have shown that under the Georgia law the officer is not absolutely liable for the deposits, and that the interest becomes a part of the principal sums. We have referred to the policy of the law in keeping the funds in court for availability for distribution. It seems that the situation might be likened to one where a receiver was appointed in equity, and after having collected the assets had died, and where the court appointed another receiver who had qualified. It would seem that if the deceased receiver's executrix had possession of the assets the court could and would order her to deliver them to the deceased receiver's successor for distribution. Of course, for any assets not accounted for an action would lie against the executrix and the deceased receiver's bondsman, but as to the assets in her hands delivery over by her to the successor receiver under order of court would be a complete defense in an action by any party litigant involving assets so turned over to the successor receiver.

The court did not err in ordering the deposit paid to Chambers as successor clerk.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Stephens, P. J., and Sutton, J., concur.*