## STATE OF COLORADO v. WALSEN ET AL.

1. STATE TREASURER—LIABILITY ABSOLUTE.—Absolute liability of the state treasurer and his sureties for all public moneys received by him as treasurer is fixed by the state constitution.
2. HIS OBLIGATION DIFFERS FROM THAT OF A COMMON LAW BAILEE. —The obligation of the treasurer differs from that of an ordinary trustee. Such trustee is only held to the exercise of reasonable care with reference to the trust property. A common law bailee is required to pay out the identical money received, the state treasurer is not.
3. INTEREST RECEIVED BY TREASURER UPON PUBLIC MONEY.—In this state a state treasurer who has received public money by virtue of his office is not liable for interest received on such money, in the absence of a statutory provision to that effect.

*Error to District Court of Arapahoe County.*

THIS is one of several cases instituted in the court below for the purpose of determining the right to moneys received as interest by certain state treasurers upon state funds deposited in bank. The suits are against the treasurers and their

bondsmen. During defendant in error Walsen's term of office the bond of the treasurer was increased from $100,000 to $300,000, and Walsen, having theretofore given a bond in the former sum, filed an additional bond in the sum of $200,000. In this respect only this case differs from the others. The grounds of the demurrer are: *First*, that the complaint fails to state facts sufficient to constitute a cause of action against defendants; *second*, misjoinder of parties defendant; *third*, misjoinder of causes of action.

The following constitutional provisions are referred to in the opinion:

" Art. 10, § 12. The treasurer shall keep a separate account of each fund in his hands; and shall at the end of each quarter of the fiscal year, report to the governor in writing, under oath, the amount of all moneys in his hands to the credit of every such fund, and the place where the same are kept and deposited, and the number and amount of every warrant received, and the number and amount of every warrant paid therefrom during the quarter. Swearing falsely to any such report shall be deemed perjury. The governor shall cause every such report to be immediately published in, at least, one newspaper printed at the seat of government, and otherwise as the general assembly may require. The general assembly may provide by law further regulations for the safe-keeping and management of the public funds in the hands of the treasurer, but, notwithstanding any such regulation, the treasurer and his sureties shall in all cases be held responsible therefor."

"Art. 10, § 13. The making of profit, directly or indirectly, out of state, county, city, town or school district money, or using the same for any purpose not authorized by law, by any public officer, shall be deemed a felony, and shall be punished as provided by law."

Mr. S. W. JONES, attorney general, Mr. H. RIDDELL, Mr. L. S. DIXON, and Messrs. WELLS, McNEAL & TAYLOR, for plaintiff in error.

Mr. HUGH BUTLER, Messrs. WALDRON & HILLHOUSE, Messrs. WALCOTT & VAILE, Messrs. BENEDICT & PHELPS, Messrs. BARTELS & BLOOD, and Mr. C. S. THOMAS, for defendants in error.

CHIEF JUSTICE HAYT delivered the opinion of the court:

It is contended by appellant that the state treasurer is a bailee or trustee of the public funds and as such subject to the common law liabilities of trustees.

Absolute liability of the treasurer and his sureties for all public moneys received by him as treasurer, is fixed by the state constitution. In this respect the obligation of the treasurer is different from that of an ordinary trustee. Such a trustee is only held to the exercise of reasonable care with reference to the property. If the trust funds are stolen or otherwise lost without fault of the trustee, he is not liable. Not so, however, with the state treasurer. No amount of care will excuse him in case of loss by theft, fire or by insolvency of the banks selected as depositaries; he must make the loss good to the state. He can only be discharged by paying over the money when required, and the sureties upon his official bond also assume this unusual liability. *In re* House Resolution, relating to house bill No. 349, 12 Colo. 395. The language of our constitution which makes the treasurer absolutely liable, takes away an important right of a trustee.

It is claimed that under our statutes the treasurer is required to pay out the identical money received by him and that his duty in this respect is similar to that of a bailee at common law, hence, it is argued his liability is the same. The following statutes are cited in support of this contention.

" Gen. Stats. § 1353.   The treasurer shall:

" First. Receive and keep all moneys of the state not expressly required by law to be received and kept by some other person.

" Second. Disburse the public moneys upon warrants drawn upon the treasurer according to law, and not otherwise.

" Third. Keep a just, true and comprehensive account of all moneys received and disbursed.

" Fourth. Keep a just and true account of each head of appropriation made by law, and the disbursements made under the same.

" Fifth. Render his accounts to the auditor for settlement quarterly, or oftener if required.

" Sixth. Report to the governor, at least, twenty days preceding each regular session of the general assembly, a detailed statement of the condition of the treasury and its operations for the two preceding fiscal years.

"Seventh. Give information in writing to either house of the general assembly whenever required, upon any subject connected with the treasury, or touching any duty of his office."

It is also provided that when he shall receive any public money he shall forthwith enter the same in a book to be kept for that purpose, setting down the amount and the particular nature of the funds received. And it is further provided that in case of death or resignation of the treasurer, the governor shall appoint two persons who, with the secretary of state, shall proceed to the office of the state treasurer and seal up and secure all moneys, papers and other things supposed to belong to the state. As to the latter provision, the most that can be claimed is that it is a precaution deemed necessary to preserve from spoliation the public property and prevent the same from passing into the hands of the personal representatives of the treasurer in case of his death. We find nothing in the statutes authorizing the conclusion that the identical money must be paid. We think the provisions with regard to his accounts are for the purpose of the more easily detecting any failure to charge himself with the funds received. Certainly nothing is specified in reference to paying out the funds. There is nothing to prevent him from receiving gold and paying out silver or paper money; or he

may, if he chooses, receive the money and pay by check, if acceptable to the creditor. Indeed, we think in this age, with its advanced facilities for the transaction of business without handling the currency, it is not to be presumed that the legislature would make an exception in case of the state treasurer in the absence of language directly indicating such intention. In this respect then, the obligation of the state treasurer is dissimilar from that of a bailee at common law. The distinction between officers invested with the collection and disbursement of public funds and a private bailee has been pointed out and enforced in many adjudicated cases. *Wilson et al. v. Wichita Co.*, 67 Tex. 647 ; *Commonwealth v. Godshaw*, 17 S. W. Rep. (Ky.) 737 ; *Inhabitants, etc., v. Mc-Eachron*, 33 N. J. L. 339 ; *United States v. Prescott*, 3 How, 578.

The constitution declares that the making of profit by him, either directly or indirectly, out of public funds shall be deemed a felony and punished as provided by law. This provision recognizes that a profit may, in fact, be made by the treasurer, although it declares the making thereof a felony to be punished as provided by law. It does not provide that the profit to be made shall enure to the benefit of the state. By the next succeeding section, however, power is expressly lodged in the legislature to make all reasonable and proper regulations regarding the safe-keeping and management of the public funds. Ample provision in the premises is here conferred upon the legislature.

It was not until subsequent to the expiration of Walsen's term of office that the general assembly exercised this power. The continued neglect to act in the premises was clearly not the result of an oversight on the part of the law-making department of the government. It was called to the attention of the house of representatives by this court in an opinion in 1889 in response to a resolution relating to House Bill No. 349. See 12 Colo. 395. The power of the legislature was pointed out at that time and its duty in reference thereto suggested. It was certainly not then contemplated that

the treasurer could be held liable in the state that law was then to be found.

The intention of that legislature upon this subject will be apparent from a glance at the act in reference to public funds passed at the session. See Session Laws, 1889, p. 297. By this act all public funds of corporate subdivisions of the state were provided for with much particularity, the state treasurer and the funds of the state alone being excepted. That this omission was purposely made is apparent from the circumlocution employed to cover all other offices and all other public funds. The first section of said act commences as follows:

"If any officer appointed or elected by virtue of the constitution of this state, or any law thereof, as an officer, agent, or servant of an incorporated city, town, municipal township, school district or county, or other subdivision of this state, shall convert to his own use in any way whatever, or shall use by way of investment in any kind of property or merchandise, or shall make way with or secrete any portion of the public funds or moneys * * * "

Passing on to the third section we find among other things therein provided, the following with reference to the recovery of benefits: * * * " but the person or persons, body or bodies corporate, or other association, shall be liable to the county, city, town, township or school district where funds are deposited, in an action for the recovery of all such benefits or advantage as would, by the terms of such contracts or agreement, have accrued to such officer, agent or servant; and payment to the officer, agent or servant shall not protect the person or persons, body or bodies corporate, or other association, against an action of recovery brought by the county, city, town, township or school district whose funds are so deposited."

It is plain that the legislature for reasons best known to the members of that body was not then in favor of giving to the state a right of action against the state treasurer for interest received upon state funds. This was undoubtedly,

a proper subject of legislation, and whatever may be the private views of the members of this court as to the liability of such legislation it must be remembered that it is the province of the courts to declare the law and not to make it. The eighth general assembly made provision for the payment to the state of all interest collected upon the money belonging to the state, and at the same session doubled the salary of the treasurer; this is the first legislation upon the subject of such interest to be found in our statutes. Session Laws, 1891, pp. 196–198.

From what has been said it is apparent that both the legislative and judicial departments of the government have construed the constitution as requiring additional legislation, in order that the state could recover interest. This construction has, from the first, been adopted by the officers of the executive department. And successive governors have, in their public messages, urged upon the legislative department the necessity for suitable legislation upon the subject. That contemporaneous construction of this character long acquiesced in, while not controlling, is entitled to great weight, is recognized by many authorities. Sedgwick on Construction of Stat. & Const. Law, 214 et. seq.; Endlich Interpretations of Stats., chap. XIII; *Perley v. The County*, 32 Mich. 132; *Talbott's Devisees v. Hooser*, 12 Ky. 408.

The courts of last resort in several of the states have been called upon to determine questions in reference to the liability of public officers for interest collected upon the public funds under their control. In some instances the decisions have been based upon statutes, and are of no benefit here. The remainder are divided between those in which the liability of the treasurer is declared and those in which it is denied. In Illinois a recovery has been upheld, although the opinion is to some extent predicated upon a statute. See *Hughes v. The People*, 82 Ill. 78; *Cooper et al. v. The People*, 85 Ill. 417.

In New York, in the case of *Supervisors v. Wandell*, 6 Lans. 33, the right of the county to recover for interest actually

paid into the treasury and afterwards withdrawn and retained
by the treasurer under an allowance made to him by the au-
diting board, was upheld, the court holding that the au-
diting board was without authority to make such allowance.

So in *United States v. Mosby*, 133 U. S. 273, the supreme
court of the United States held that the interest on public
moneys deposited in bank belongs to the United States.    The
way was paved for this decision, however, as early as 1872 in
the case of the *United States v. Thomas*, 15 Wallace, 337,
where the court held that a collector of public money under
bond to keep it safely and pay it when required, is not abso-
lutely bound to pay the money, but is excused if prevented
from returning it by the act of God or the public enemy,
without any neglect or fault on the part of the officer.

The measure of the liability of the officer seems to be the
distinction upon which all or nearly all adjudicated cases
may be harmonized.    In those jurisdictions where the liabil-
ity of the officer is held to be absolute, no action can be
maintained against him for the interest or profits made upon
the money, in the absence of a statute authorizing such re-
covery.    While on the contrary in those jurisdictions in
which the officer is held to a less strict liability a different
rule prevails.    Thus, in Indiana, it has been repeatedly held
that a public officer cannot be required to pay interest re-
ceived by him upon the public funds in his hands.    *Rock v.
Stinger*, 36 Ind. 346; *Shelton v. The State*, 53 Ind. 331; and
a similar conclusion was reached by the supreme court of
Georgia.    See *Renfrew et al. v. Colquitt*, 74 Ga. 618.    And
a like conclusion has been recently announced by the su-
preme court of Kentucky in the case of *Commonwealth v.
Godshaw, supra.*

The decision in the latter case has been filed since the oral
argument in the case at bar, and is the latest authoritative ex-
position of the law that we have found.    It is there expressly
determined that the rule in regard to ordinary trustees hold-
ing for *cestui que trust* does not apply to a public officer who
is an insurer of the money, and that in the absence of a stat-

ute, the treasurer is not liable for interest received on money deposited in bank.

It is believed that the authorities upon this point are uniform. No case has been cited from jurisdictions in which the officer's liability is absolute, where in the absence of statute he has been held as bailee or trustee of the fund with common law liabilities as to the interest thereon. It is not claimed that Walsen did not pay over when required all the money collected by him as treasurer. The claim being that he made a profit out of this money and that such profit belonged to the state. The treasurer was not required to loan the principal; if he did put it out and secure interest upon it as charged, or if he had invested it in business and made a profit, although such acts are felonies under our constitution, we are of the opinion that such profit cannot be recovered by the state under the law as it then existed.

The discharge of the principal of course relieves the sureties. In fact, the reasons for his discharge apply with even more cogency as to them. Finding the judgment of the district court to be in accordance with law it must be affirmed.

*Affirmed.*