waters that are surface waters under the rule herein laid down, and to cast the same into and upon a servient estate lying lower down in the same natural drainage water course, at that point where nature, by means of ravines or depressions, has indicated that such surface waters should find a natural outlet; provided, however, that such surface waters should not be collected or permitted to collect, and then be cast upon the servient estate in unusual or unnatural quantities; and, provided, also, that the surface waters of one natural watershed or basin may not, by means of the cutting or removal of natural barriers, be cast into or upon lower lands lying in another and different natural drainage course or basin.

The judgment and order appealed from are reversed.

---

STATF. Annellant, v. SCHAMBER et al., Respondent.

(165 N. W. 241.)

(File No. 4092. Opinion filed December 4, 1917.)

1. **Pleadings—Demurrer—Sufficiency of Complaint, Prayer for Relief, Relation of to Demurrer.**

On demurrer to a complaint asking for equitable relief, the question whether the facts pleaded entitle plaintiff to legal relief is not presented; since the sufficiency of the complaint depends, not upon the prayer but upon facts pleaded, and if those facts entitle plaintiff to any relief, it is not subject to demurrer as failing to state a cause of action.

2. **States—State Treasurer—State Funds, Title in State—Interest on, Whether Belonging to State or Treasurer—Treasurer as Insurer, Public Policy as Related to—Treasurer as Trustee—Statutes.**

Under Pol. Code, Secs. 333-348, providing (Sec. 333) that all moneys belonging to the state deposited in banks by state treasurer shall be deposited not to his credit as an individual, but in his name as state treasurer, the title thereto is and remains in the state; and furthermore, the state treasurer is an insurer of public funds of which he is custodian, not merely because of the statute, nor because of some bond he may enter into, but because to so hold him is in furtherance of sound public policy; it not being contended that the treasurer exceeded his authority either in depositing state funds in banks or in contracting to receive or in receiving interest upon funds so deposited; and he is also a trustee of such funds, and liable as such; and, assuming that his relation is that of a debtor, his liability as insurer not being absolute, he and his

bondsmen are liable to the state for interest received thereon; such interest being a mere increment of such principal fund; and whenever such increment was paid to him it was paid into state treasury, whether in fact it ever reached the treasurer's office or was entered in his official books. He and his bondsmen were liable for all funds paid in the treasury, which liability was not affected by the fact that part of such funds happened to be earnings or increments of other funds. Moreover, even if it will avail him anything, the law will not allow the treasurer to stulify himself by taking the position that he entered into an unlawful contract with the banks, under which they were to pay him interest on funds deposited by him. Such interest money came lawfully into possession of the treasurer as public funds; and he and his bondsmen must account therefor, unless released for reasons not appearing in the complaint. So held, in a suit by the state against state treasurer and his bondsmen to recover interest upon funds deposited by him in banks; the statutes (Laws 1895, Ch. 152, Laws 1897, Ch. 106) not providing that he should deposit money at interest, while they did not render it unlawful for him to do so and to contract that the banks should pay interest upon such deposits. It was the state funds and not the treasurer that earned such interest.

3. Same—State Treasurer, as Insurer of Public Funds—Trusteeship as Related to—Whether a Debtor.

The contention that, merely because one is an insurer of public funds, he ceases to be a trustee thereof and liable as such, but assumes the relation of a debtor, is not tenable. So held, concerning the liability of state treasurer for interest upon public funds by him deposited in banks.

4. Same—State Treasurer, Liability for Public Funds Loaned to Banks—Public Policy, Requirements of.

The liability of a public officer to the state as custodian of public funds, being based on public policy, held, that such policy requires, and the law contemplates, that such funds shall always remain funds of the public, so that the funds themselves can be looked to as a security of the public's interest. Anything which would encourage a custodian of public funds to take and loan them out for his own profit would place before him a temptation to deposit in those depositaries that would pay him highest interest rate—would tend to induce him to weigh his chance of personal gain against that of loss of the public money, a thing public policy could not tolerate.

5. Same—State Funds in Treasurer's Custody—Treasurer as Insurer, Whether Also a Trustee?

Aside from all questions of public policy, neither reason nor sound authority supports the contention that, because a cus-

todian of public funds is insurer thereof, he ceases to be a trustee thereof but assumes toward the public the relation of mere debtor.

6.  **Same—State Treasurer, Liability of for Interest on Funds, Whether that of a Debtor?—Limitation of Liability, Whether as Trustee?**

The liability of a public officer as custodian of public funds is ended when he is unable to restore the funds themselves because prevented by superhuman cause or by public enemies, regardless of whether he would be financially able to respond as a debtor; and this even though he still be possessed of unlimited means to meet a liability; while if he were a mere debtor and liable as such, the working of irresistible superhuman causes or acts of public enemies would not exonerate him from such liability as debtor, unless it so reduced his wealth as to prevent him from or delay him in meeting such liability (Civ. Code, Sec. 1173). But if such custodian were a mere debtor to the public, no destruction of public funds by the above mentioned causes would release him from his debt, unless it left him financially unable to pay the debt and not merely unable to restore the fund. Dictum.

7.  **Same—State Treasurer, Liability for Interest on Funds—Constitution—Statutes, re State, County, Treasurer, Effect on Former—Political Discussion re Taking Interest, Effect on Legislative Action—Inference Therefrom, Whether Warranted?**

In view of Pol. Code, Sec. 333, providing that public funds received by state treasurer remained state funds—that title thereof did not pass to state treasurer; of Laws 1897, Ch. 106, providing for deposit of state funds in depositaries selected by state treasurer, but also providing that nothing therein contained should relieve him or his bondsmen from any liability under which they would otherwise rest; and of Laws 1897, Ch. 104, which, among other things, enacted the provisions of Const., Art. 11, Sec. 11, which prohibited and provided for punishment for making of profit, etc., out of state, etc., money, or using same for any purpose not authorized by law, and (the statute) specifically providing that a county treasurer shall also be liable on his official bond for profits realized by such unlawful use of such funds, held, that the contention by a state treasurer and his bondsmen, that this latter act immediately followed a political campaign wherein the taking of interest by state treasurers was matter of statewide discussion, and that therefore the courts should infer therefrom in effect that the Legislature of 1897 was of the mistaken opinion that the law of this state was such as to render state treasurer non-liable for such interest, and that the Legislature did not desire to change such law except as to county treasurers, and

that the law, after 1897, (including Laws 1909, Ch. 229, requiring, among other things, that state treasurer account to state for interest so collected), was the law the Legislature would have passed had it have known what was then the law,— is untenable, since this would be asking the Court to recognize a novel method of enacting legislation, and one the Court cannot adopt.

Polley, J., dissenting.

Appeal from Circuit Court, Beadle County.  Hon. ALVA E. TAYLOR, Judge.

Action by the state, against John Schamber, and others his bondsmen, as state treasurer, to recover interest on public funds deposited by Schamber in banks.  From an order sustaining a demurrer to the complaint, the state appeals.  Reversed.

*Clarence C. Caldwell*, Attorney General, and *Byron S. Payne*, Assistant Attorney General (*Edward E. Wagner of counsel*), for the state.

*Buell & Denu, Gardner & Churchill, Spangler & Haney*, and *Wicks & Quinn*, for Respondents.

(2) To point two of the opinion, Appellant cited: Const.; Art. 4, Secs. 12, 13; Art. 21, Sec. 2; Art. 12, Sec. 3; Art. 11, Sec. 11; Pol. Code, Sec. 95, 97, 1788, 333, 334, et seq. and 346; Sec. 2241; Laws 1897, Ch. 106, 104; and submitted that. If Schamber received the interest in question as treasurer of the state of South Dakota, the sureties on his bond are liable for the interest so received.  The bond upon which the suit is based guarantees that Schamber shall, among other things, "deliver to his successor in office or any other person authorized by law to receive the same, all the money," etc. other articles and effects "belonging to his said office."  We submit that the interest received upon the moneys deposited in the banks belonged and still belongs to the office of treasurer.  If Schamber received interest by reason of his lawful acts as state treasurer, the money received belonged to the office, and the condition of the bond was therefore that this money should be turned over to the state.  It is not a question whether the state treasurer was required to deposit the public funds at interest, but rather whether as a matter of fact he did deposit the money at interest, and this without violating the laws of the state; citing to the general proposition: State v. McFetridge (Wis.) 20 L. R. A. 223; State v. Harshaw

(Wis.) 54 N. W. 17; Adams v. Williams, 30 L. R. A. (N. S.) 855; U. S. Mosby, 133 U. S. 273, 33 L. Ed. 625; E. S. Helby v. Cinn. Board of Education (Ohio) 63 N. E. 586; Rhea v. Blewster, 107 N. W. 940; Van Sant v. State (Md.) 53 Atl. 711; Thomas v. Territory (Okla.) 62 Pac. 355; Barney v. Saunders, 57 U. S. 16, 14 L. Ed. 1047; Custer County v. Walker, 10 S. D. 594; Allibone v. Ames, 9 S. D. 74.

Respondents cited: People v. Walsen (Col.) 28 Pac. 1119; Commonwealth v. Godchaux (Ky.) 17 S. W. 737; Maloy v. Bernalillo (N. M.) 62 Pac. 1106; Laws 1907, Ch. 104, 106; Laws 1909, Ch. 229.

(3) To point three of the opinion, Respondents cited: People v. Walsen (Col.) 28 Pac. 119; Commonwealth v. Godchaux (Ky.) 17 S. W. 737; Maloy v. Bernalillo (N. M.) 62 Pac. 1106; Session Laws 1907, Ch. 104, 106; Clay County v. Simonsen (Dak.) 46 N. W. 592; Smythe v. U. S., 188 U. S. 156; Hiatt v. State (Ind.) 11 N. E. 359; Commonwealth v. Godchaux (Ky.) 17 S. W. 737; Pearley v. Muskegan, 32 Mich. 132; State v. Harper, 6 Ohio St. 607; Franklin Township v. Crance (N. J.) 85 Atl. 408; Taylor District v. Morton, 37 Iowa, 550; U. S. v. Boyd, 15 Pet. 187.

WHITING, J. Defendant, John Schamber, was treasurer of this state for a term of two years commencing January 12, 1899. As such treasurer he entered into the official bond required by statute, upon which bond the other defendants were sureties. He deposited in various banks, from time to time, the funds in his hands as such treasurer, and it is alleged that he received interest upon such deposits. This action was brought to recover such interest. To the complaint defendants demurred. The demurrer was sustained, and the state appealed.

[1] While the only question before us is whether the facts pleaded constitute a cause of action, respondents have argued at length that the facts pleaded do not entitle appellant to equitable relief. The complaint asked for certain equitable relief. Respondents contend that the facts pleaded entitle appellant to legal relief if to any. The question thus raised is not presented by the demurrer. A prayer for relief may often assist in determining the nature of an action, where the nature thereof might otherwise be doubtful; but the sufficiency of the complaint depends, not

upon the prayer for relief, but upon the facts pleaded, and, if those facts entitle the plaintiff to any relief either legal or equitable, the complaint is not subject to demurrer upon the ground that the allegations thereof are insufficient to state a cause of action. 16 Ency. Pl. & Pr. 779; 31 Cyc. 110.

[2] The sole question for our determination is whether or not interest received by a state treasurer for the use of state funds belongs to the state or whether it belongs to the treasurer. Numerous authorities will be found wherein the right of custodians of public funds to retain interest received by them upon the deposit of such funds in banks has been considered, and the holdings of the courts are far from uniform. In almost all of the adjudicated cases it will be found that the court recognize the fundamental proposition that interest is but an increment and goes with the principal, but there are courts that base their decision upon grounds having no relation to such proposition. This, while some courts have held that such interest money belonged to the custodian because, under the facts of the particular case, the court found that the title to the principal funds was in the custodian thereof and the relation of debtor and creditor, rather than of trustee and cestui que trust, existed between such custodian and the public, other courts have held that such interest money belonged to the custodian: (1) Because, in the particular case, the court held that the depositing of the money and the contracting to receive interest thereon was unlawful and held that it was not in the contemplation of either party to the bond that the custodian would make such deposit and receive interest thereon, and hence there was no liability on the bond for such interest; (2) because, under the facts of the particular case, the court found that the custodian become an insurer of the funds received by him, and liable, as such, to account therefor, that, because of such liability, the ordinary liability of a trustee to account to his cestui que trust for profits made from the trust fund did not exist, and that the relation between the custodian and the public was that of debtor and creditor. See cases cited in notes to Adams v. Williams, 30 L. R. A. (N. S.) 855. An examination of the authorities will reveal that, in some cases where it has been held that a custodian of public funds was entitled to the interest received from such

32—Vol. 39, S. D.

funds and where it has also been held that he was an insurer of such funds, the courts have placed such right to the interest, not directly upon the ground that the custodian was an insurer of the funds, but upon the ground that, owing to the fact that he was an insurer of such funds, the title thereto vested in him, thus bringing those cases within the line of decisions holding that the increment follows the principal. Such was the holding in Commonwealth v. Godshaw, 92 Ky. 435, 17 S. W. 737, hereinafter referred to.

Respondents do not contend that the title to the moneys received by the treasurer passed from the state to such treasurer. In fact it would be most presumptuous, in the light of the various sections of our statutes relating to the public funds of the state —particularly sections 333-348, Pol. Code—for any one to so contend. We would call particular attention to section 333, which reads:

"All moneys belonging to the state, deposited in banks by the state treasurer shall be deposited not to his credit as an individual, but in his name as state treasurer, and not otherwise."

Neither do respondents contend that the treasurer exceeded his authority either in depositing the state funds in banks or in contracting to receive or in receiving interest upon funds so deposited. It is therefore unnecessary for us to determine the soundness of the proposition that, if the interest money was unlawfully received, recovery therefor could not be had on his bond.

Respondents rely upon two propositions: (1) That the treasurer was an insurer of the funds coming into his hands and therefore not liable, as a trustee, to account for profits arising thereform; and (2) that the Legislature of this state had indicated an intention that the state treasurer should not be held civilly liable for the receipt and retention of such interest money, and the court should be controlled by such expression of intent. Respondent rely chiefly upon the opinion in the case of State v. Walsen, 17 Colo. 170, 28 Pac. 1119, 15 L. R. A. 457, but also cite the cases of Commonwealth v. Godshaw, supra, and Maloy v. Bernalillo, 10 N. M. 638, 62 Pac. 1106, 52 L. R. A. 126.

Much discussion will be found in the authorities upon the question as to whether or not a custodian of public funds is an insurer of such funds. That question has been settled in this

jurisdiction by the decisions in Clay County v. Simonsen, 1 Dak. 403 (387), 46 N. W. 593, and School District v. Northern Casualty Co., 36 S. D. 392, 155 N. W. 10. It is the settled law of this state that the custodians of public funds are insurers of such funds. But nevertheless we agree with the words of the court in the case of Adams v. Williams, supra:

"It is a complete non sequitur to say that, because Williams was an absolute insurer, therefore the interest belonged to him. The two principles have no relation whatever to each other. Once settled clearly and definitely whose money the principal sum was, and the interest necessarily belongs to that person as an increment to the principal fund, and to argue to the contrary is simply to lose one's self in a metaphysical fog of sophistry, failing to give effect to the central principle of right and justice making the interest the property of the party who owned the principal sum."

[3, 4] The contention that, merely because one is an insurer of public funds, he ceases to be a trustee thereof and liable as such, but assumes the relation of a debtor, is so completely answered in Adamas v. Williams, supra, and in State v. McFeetridge, 84 Wis. 473, 54 N. W. 1, 20 L. R. A. 223, that we hesitate to do more than to refer to such decisions.

But owing to the importance of the question before us, not only to the parties to this action, but to the many custodians of public moneys and their cestui que trusts, we feel justified in calling attention to some matters which we believe may assist in making clear the law of this case. A custodian of public funds is held to be an insurer of such funds, not merely because there may be some statute so providing, nor because of the provisions of some bond he may enter into, but, as declared by most of the authorities sustaining such liability, *because to so hold him is in furtherance of a sound public policy.* U. S. v. Prescott, 3 How. 578, 11 L. Ed. 734; Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375, 34 L. R. A. 678, 56 Am. St. Rep. 612; Cameron v. Hicks, 65 W. Va. 484, 64 S. E. 832, 17 Ann. Cas. 926. It certainly would be the extreme of inconsistency for the courts to hold that the custodian's liability as an insurer is based upon public policy and then to hold that, being such insurer of the public funds, such custodian is entitled to all profits received therefrom. It would not be in accord with sound public policy for

the public to rest its protection against loss of its funds solely upon the personal responsibility of its custodian and of his bondsmen. Public policy requires, and the law contemplates, that such funds shall remain at all times the funds of the public, so that the funds themselves can be looked to as a security of the public's interests. Anything which would encourage a custodian of public funds to take such funds and loan them out for his own profit would place before such custodian a temptation to deposit the funds in those depositaries that would pay to him the highest rate of interest—would tend to induce him to weigh his chance of personal gain against the chance of loss of the public's money, a thing which public policy could not tolerate.

[5] But, casting aside all questions of public policy, there still remains neither reason nor sound authority to support the contention that, because a custodian of public funds is an insurer of such funds, he ceases to be a trustee thereof, but assumes toward the public the relation of debtor. In the Walsen and Malloy cases it is announced as the controlling proposition that:

"The measure of the liability of the officer seems to be the distinction upon which all or nearly all adjudicated cases may be harmonized."

The line of reasoning of the courts which hold as above would seem to be about as follows: The liability of a debtor is absolute. The liability of a trustee or bailee is conditional. Therefore whenever the liablity imposed upon a trustee or bailee is absolute such trustee or bailee becomes a debtor with all the rights of a debtor and freed of all liabilities imposed upon a trustee or bailee. How much more logical to say that a custodian of public funds is a bailee or trustee like any other custodian and burdened with the same duties and liabilities except as such duties and liabilities may be affected by statute or by public policy. But accepting the above line of reasoning, let us see if the liability of a custodian of public funds is the same as that of a debtor. If not, the conclusion reached is without support. In U. S. v. Prescott, supra, the liability of a custodian of public funds was spoken of as absolute, and such was the language of this court in School Dist. v. Northern Casualty Co., supra. It is apparent from a reading of the Walsen case that the Colorado court was of the opinion that such liability was absolute. In such

opinion there is an implied concession that, if such liability was less than absolute, the relation of debtor would not arise. In U. S. v. Thomas, 15 Wall. 337, 21 L. Ed. 89, the court refers to the following language used in U. S. v. Prescott, supra:

"The obligation to keep safely the public money is absolute, without any condition, express or implied; and nothing but the payment of it, when required, can discharge the bond,"

—and then says, as we might well say of the language of this court in School District v. Northern Casualty Co., supra:

"This broad language would seem to indicate an opinion that the bond made the receiver and his sureties liable at all events, as now contended for by the government. But that case was one in which the defense set up was that the money was stolen, and a much more limited responsibility than that indicated by the above language would have sufficed to render that defense nugatory. And as the money in the hands of a receiver is not his, as he is only custodian of it, it would seem to be going very far to say that his engagement to have it forthcoming was so absolute as to be qualified by no condition whatever, not even a condition implied in law. Suppose an earthquake should swallow up the building and safe containing the money, is there no condition implied in the law by which to exonerate the receiver from responsibility?"

[6] And the court in the Thomas case declared that a custodian of public funds could not be holden to account for them when they had been forcibly taken from him by a public enemy. This limitation upon a custodian's liability is quite generally recognized wherever the court's attention is called thereto. It is even recognized in the Malloy case though such recognition is inconsistent with the conclusion reached by the court therein. Among the cases wherein this limitation of liability is recognized are: State v. Bobleter, 83 Minn. 479, 86 N. W. 461; Tillinghast v. Merrill, supra; Cameron v. Hicks, supra; and Clay County v. Simonsen, supra, decided by our own territorial court. As we stated above, the Colorado court impliedly conceded that if the liability was limited the relation of debtor and creditor would not arise. Referring to the holding in U. S. v. Mosby, 133 U. S. 273, 10 Sup. Ct. 327, 33 L. Ed. 625, to the effect that interest on

public moneys of the United States belongs to the United States, the Colorado court says:

"The way was paved for this decision, however, as early as 1872, in the case of United States v. Thomas [82 U. S.] 15 Wall. 337 [21 L. Ed. 89], where the court held that a collector of public money, under bond to keep it safely, and pay it when required, is not absolutely bound to pay the money, but is excused if prevented from returning it by the act of God or the public enemy, without any neglect or fault on the part of the officer."

Is this limitation of liability recognized in the above cases a limitation of a *debtor's* liability or is it a limitation of a *trustee's* or *bailee's* liability? The answer is to be found in the answer to the question of whether the irresistible superhuman cause or the public enemy must need render the custodian financially unable as a debtor to meet the debt or need only remove from him the power to restore the particular fund itself in order to exonerate him from liability. It is clear that the custodian is released from liability for funds in his charge when he is unable to restore the funds themselves because prevented therefrom by such superhuman cause or by the public enemies as in the Thomas case, and this entirely regardless of whether he would be financially able to respond as a debtor. If he lose the particular fund owing to the workings of some irresistible superhuman cause or the acts of a public enemy he is exonerated of all liability even though he still be possessed of unlimited means to meet a liability; while if he were a debtor and liable as such the workings of irresistible superhuman causes or the acts of a public enemy would not exonerate him from such liability as a debtor unless it so reduced his wealth as to prevent him from or delay him in meeting such liability. Section 1173, C. C. If such a custodian were a mere debtor to the public no destruction of public funds by any superhuman agency or seizure by any public enemy would release him from his debt unless it left him financially unable to pay the debt and not merely unable to restore the fund.

As above noted, it is urged in some of the decisions that, because of the fact that the treasurer is an insurer he ceases to be a trustee or bailee and the title to the funds vests in him and that therefore he is entitled to receive the interest therefrom. Certainly it would be illogical to hold a custodian of public funds to be a

debtor and still hold that he did not have title to the funds—one could hardly be debtor for funds the title of which was in his creditor. In order to complete the circle in which those courts reason which hold that, because of the extent of the liability of a custodian of public funds, such custodian is a mere debtor, we must also hold him to be the owner of the fund. Then the circle is complete, and starting from any one of the three points, the line of reasoning, no matter which direction you travel, leads you to both of the other points. But if there is a defective link in this circular chain the whole structure must fall. As noted before, the express wording of our statute prevents us from holding that title to the state's money vested in the treasurer. Even though we had no statutes clearly providing that the title to the funds should remain in the state, yet we may well say with Judge Newman, the trial judge before whom State v. McFetridge, supra, was tried, after holding that the treasurer was an insurer of the funds in his hands, that:

"This makes the responsibility of the custodian of public funds the same as the common law responsibility of the common carrier. * * * It has not been claimed that the common carrier, by reason of his strict responsibility, becomes the owner of the goods he carries."

We might add that no one would claim that, because the common carrier is an insurer of the goods instrusted to it, with a liability exactly coextensive with that of a custodian of public funds, it ceased to be a bailee of such goods and became a mere debtor for their value and entitled to all the profits it could make out of the goods.

[7] But respondents urge another ground why the state treasurer is not liable for this interest. They say:

"The question involved is not what obligations generally arise from the possession of a public office or the custody of public funds. The vital question is simply this: What rule relating to the subject of interest was in force in this state during Mr. Schamber's terms of office?"

And because of this claim they rely particularly upon the case of State v. Walsen, supra. Section 11, art. 11, of our Constitution provides:

"The making of profit, directly or indirectly, out of state, county, city, town or school district money, or using the same for any purpose not authorized by law, shall be deemed a felony and shall be punished as provided by law."

Prior to the year 1897 there had been enacted several provisions of our statutes, among them section 333, P. C., supra, clearly providing that the public funds received by the state treasurer remained the funds of the state—that the title thereof did not pass to the treasurer. Until the year 1897 there was no statute whereby either the state or any municipal division thereof was expressly empowered to recover from its treasurer interest received by such treasurer for the use of public moneys in his custody. In the year 1897 the Legislature passed a law providing for the deposit of state funds in depositaries to be selected by the state treasurer, but also providing that nothing contained in such law should relieve the treasurer or his bondsmen from any liability under which they otherwise would rest. During the same session of the Legislature there was enacted a statute which, among other things, enacted as a part of our statutory law the provisions of section 11, art. 11, supra, rendering them applicable to county treasurers only, and specifically provided that a county treasurer "shall also be liable under and upon his official bond for the profits realized by such unlawful using of such funds." It will be seen that the situation, so far as the Constitution and statutes of this state were concerned, existing in 1899, was quite similar to that existing in Colorado and made, by the court of that state, one of the grounds for its holding in the case of State v. Walsen, supra. Respondents would lead us to believe that in State v. McFetridge, supra, the court approved of the holding of the Colorado court. Not so—it was stated in the McFetridge case that, inasmuch as Wisconsin had no statutes such as those relied upon by the Colorado court, it was unnecessary for the court to consider the reasoning of the Colorado court in so far as the same was based upon such statutes. Respondents state that:

"The Legislature intentionally changed the rule making county treasurers absolutely liable for loss of funds without accountability for interest and deliberately declined to make the same change as to the state treasurer."

Evidently, in order that we might conclude that the action of the Legislature in 1897 was prompted by matters of contemporaneous history, respondents have called our attention to the fact that the Walsen and McFetridge cases had but recently been decided, and that—a fact of which they ask us to take judicial notice—this action of the Legislature immediately followed a political campaign wherein "the taking of interest by state treasurers was a matter of earnest state-wide discussion." If we should draw all the inferences which respondents could ask us to draw from what the Legislature did do as read in the light of matters of concurrent history, we would conclude: That the Legislature of 1897 was of the mistaken opinion that the law of this state was that announced in the Walsen case. That such Legislature did not desire to change such law except as to county treasurers. That by enacting the law it did enact it supposed it was changing the then existing law to the extent of holding county treasurers liable when otherwise they would not be liable. That, if the Legislature had understood that the existing law was as declared in the McFetridge case, it would have, by express statute, so changed the law that all custodians of public funds, other than county treasurers, would have been released from civil liability for interest received by them from such funds. Basing our ruling upon such inferences, respondents would ask us to hold that the law of this state, after 1897, was the law which the Legislature of 1897 would have passed if it had known what was then the law. This is asking us to recognize an entirely novel method of enacting legislation, and one we cannot adopt.

In conclusion we call attention to the following controlling facts: The title to all moneys received by the state treasurer remains in the state under the clear provisions of our statute. While the statute then in force did not provide that the treasurer should deposit money at interest, there was absolutely nothing in such statutes that rendered it unlawful for a state treasurer to deposit moneys in a bank and to contract that the bank should pay interest upon such deposits. It was the state funds that earned this interest and not the treasurer. Such interest became a mere increment of such principal fund, and whenever such increment was paid to the state treasurer it was paid into the state treasury of this state whether in fact it ever reached the office of state

treasurer or was entered in the books of such office. Unless the state treasurer actually misappropriated such interest money, he was guilty of no crime, even though he may have contracted that such interest should be paid to him individually and not to him as state treasurer. The treasurer and also his bondsmen were liable for all funds paid into the treasury and such liability was not affected by the fact that a part of such funds happened to be the earnings or increment of other funds. Moreover, even if it would avail him anything, the law would not allow the treasurer to stultify himself by taking the position that he entered into an unlawful contract with the banks. The law finds that this interest money came lawfully into the possession of the treasurer as public funds. For such public funds lawfully received by the treasurer, he and his bondsmen must account unless released for reasons not appearing in the complaint.

The order of the trial court is reversed.

POLLEY, J. (dissenting). I believe the order sustaining the demurrers should be affirmed. It is true, as stated in the majority opinion, that the demurrers of the defendants do not present the question of plaintiff's right to equitable relief; still I believe the demurrers should be sustained on the ground that the facts stated in the complaint do not entitle plaintiff to any relief whatever.

That the defendant Schamber received considerable amounts of money from the various banks for the use of funds belonging to the state is not only admitted by the demurrer, but it was a matter of common knowledge, at the time Schamber was in office, that the various state treasurers, including said defendant, had been receiving and appropriating to their own use interest on state funds since the adoption of the Constitution. Such practice was continued until the year 1909, when the Legislature enacted a state depositary law creating a board of finance, providing for the designation of certain banks to act as state depositaries, requiring the payment of interest on state funds deposited in such depositaries, releasing the treasurer from liability for loss occasioned by the failure or insolvency of such depositary banks, requiring the treasurer to account to the state for all interest collected on said funds, and making it a felony for him to make any profit, directly

or indirectly, out of any money belonging to the state.   Chapter 229, Laws of 1909.

The right of state treasurers and other custodians of public funds to receive and appropriate to their own use interest on such funds while in their custody has been contested in the courts of several of the states in recent years, but the conclusions reached by the various courts are far from uniform.   The extent of the treasurer's liability has been the controlling feature with some of the courts, holding that, where the treasurer is absolutely liable or an insurer of the public funds that come into his hands, he is not liable for any interest that may be paid to him for the use of such funds; but that, when his liability is only that of a trustee or bailee, he should account for any interest or other increment that may be earned by any such funds while in his custody.   Commonwealth v. Godshaw, 92 Ky. 435, 17 S. W. 737; Renfroe v. Colquitt, 74 Ga. 618; Maloy v. Bernalillo Co. Cob., 10 N. M. 638, 62 Pac. 1106, 52 L. R. A. 126; Eshelby v. Cincinnati Bd. of Ed., 66 Ohio St. 71, 63 N. E. 586; Rhea v. Brewster, 130 Iowa, 729, 107 N. W. 940, 8 Ann. Cas. 389.   Other courts hold that a treasurer is liable for any interest received by him on public funds whether he is absolutely liable or not.   United States v. Mosby, 133 U. S. 273, 10 Sup. Ct. 327, 33 L. Ed. 625; State v. McFetridge, 84 Wis. 473, 54 N. W. 1, 20 L. R. A. 223; Adams v. Williams, 97 Miss. 113, 52 South. 865, 30 L. R. A. (N. S.) 855, Ann. Cas. 1912C, 1129.   Again, other courts hold that a treasurer becomes vested with the title to a public fund when it comes into his hands, and that it is not a matter of concern to the public what use is made of it while in his hands or how much it may earn by way of interest; that, when the principal is accounted for, the treasurer's liability ceases.   Rock et al. v. Stinger, 36 Ind. 346; Shelton v. State, 53 Ind. 331, 21 Am. Rep. 197.   A review of these cases will not be attempted.   They have all been collected and reviewed in Adams v. Williams, 97 Miss. 113, 52 South. 865, also in a note appended to that case, where it is reported in 30 L. R. A. (N. S.) 855, Ann. Cas. 1912 C, 1129, and further comment upon them would be superfluous.

A determination of the defendant's liability in this case de-pends upon, or at least requires an examination of, our Constitu·

tion and the statute law in force at the time the alleged liability accrued. Section 11, art. 11, of our Constitution provides that:

"The making of profit, directly or indirectly, out of state, county, city, town or school district money, or using the same for any purpose not authorized by law, shall be deemed a felony and shall be punished as provided by law."

While this section of the Constitution declares the making of profit out of state money to be a felony, it provides no penalty for its violation. Therefore it remained inoperative until the Legislature should prescribe a penalty. By section 1, c. 152, Laws of 1895, it is provided that:

"All moneys belonging to the state, deposited in banks by the state treasurer, shall be deposited not to his credit as an individual, but in his name as state treasurer, and not otherwise."

This law recognizes the right of the treasurer to keep the state funds deposited in banks, but it studiously avoids the fixing of a penalty for a violation of section 11, art. 11, of the Constitution, and it just as studiously avoids prohibiting the treasurer from collecting and retaining interest thereon. Section 1 of chapter 106, Laws of 1897, authorized the state treasurer to designate certain banks to act as depositaries of the state funds. Section 2 required that such depositaries should, before receiving any of the public funds, furnish security for the safe-keeping of the same, and section 7 of said chapter provides that:

"Nothing in this act contained shall be held or construed to relieve the treasurer or his bondsmen from any liability on the said treasurer's official bond or [to] reduce the amount thereof or in any way impair the obligations of the same."

Section 4, c. 104, of the same session provides that:

"The making of profit, directly or indirectly, by the county treasurer out of any money in the county treasury, the custody of which the treasury is charged with, by loan or depositing or otherwise using or depositing the same in any manner. * * * shall be deemed guilty of a felony, and upon conviction thereof"

—shall be punished, etc. It will be noted that this act applies to *county* treasurers only, and it will be further noted. upon an examination of both of these acts and of chapters 105 and 107 of the same session, all of which relate to the safe-keeping of public funds, that nothing therein contained prohibits the state treasurer

from receiving and retaining interest on the state funds or provides a penalty for doing the same. A comparison of these acts of the Legislature is instructive. Chapter 104, Laws of 1897, requires the *county* treasurer to designate county depositaries of the county funds, requires such depositary to furnish security for the safe-keeping of such funds, authorizes the collection of interest thereon for the use of the county, provides a penalty for the making of profit thereon by the treasurer, and releases said treasurer from liability on his bond in case the provisions of the law have been complied with. Chapter 106, Laws 1897, authorizes the *state* treasurer to designate state depositaries and to take security for the safe-keeping of the state funds. It does not require him to collect interest for the use of the state on such funds, nor does it prohibit him from collecting and retaining interest thereon; and it is expressly provided by section 7 that nothing in the act contained shall be held or construed to relieve the treasurer or his bondsmen from any liability on his official bond or to reduce the amount thereof.

From the course pursued by the Legislature, as indicated by the enactment of the foregoing statutes, and in view of the fact that every member of the Legislature knew that the state treasurer was receiving and retaining interest on the state money, and that they had been doing so since the adoption of the Constitution, but one conclusion can be drawn, and that is that the Legislature intended that, in consideration of the great responsibility assumed by the state treasurer, he might continue to receive and retain interest on such funds. Such a course had been sanctioned by the Legislatures and Supreme Courts of several of the states. What has usually beeen regarded as the leading case in support of the treasurer's right to receive and retain interest on public funds is State v. Walsen, 17 Colo. 170, 28 Pac. 1119, 15 L. R. A. 457. Defendant in that case had been state treasurer, and he had received interest on the public funds. Such interest was not accounted for, and the action was prosecuted by the state for the recovery thereof. Section 13, art. 10, of the Constitution of Colorado is as follows:

"The making of profit, directly or indirectly, out of state, county, city, or school district money, or using the same for any

purpose not authorized by law, by any public officer, shall be deemed a felony, and shall be punished as provided by law."

This in effect is identical with section 11, art. 11, of our Constitution. In 1889 the Legislature of Colorado enacted a law (Laws 1889, p. 297) similar in effect to section 4, c. 104, Laws of 1897, which, like section 4, c. 104, Laws of 1897, made no reference whatever to state funds. Of this law, the Supreme Court of Colorado, in State v. Walsen, supra, said:

"That this omission was purposely made is apparent from the circumlocution employed to cover all other offices and all other public funds.

And, in the same case, that court further said:

"From what has been said, it is apparent that both the legislative and judicial departments of the government have construed the Constitution as requiring additional legislation in order that the state could recover interest. This construction has, from the first, been adopted by the officers of the executive department and successive governors have, in their public messages, urged upon the legislative department the necessity for suitable legislation upon the subject."

The court held that the state was not entitled to recover the interest.

Renfroe v. Colquitt, 74 Ga. 618, was an action by the state of Georgia for the recovery of money that had been paid to defendant as interest on the public funds while holding the office of state treasurer. The Constitution of Georgia contained a provision similar in effect to section 11, art. 11, of our Constitution, making it a felony for the treasurer to make a profit out of the state money. The court in that case held that the interest involved was not received by the defendant by virtue of his office, but in violation of the law, and that the state was not entitled to recover. In State v. Kimball, Wils., 174, the state of Indiana attempted to collect from the state treasurer money that had been paid to him as interest on the public funds while he was holding the office of state treasurer. There was a law in force in Indiana at that time which made it a felony for the treasurer to recive any interest or bonus for the use, loan, or deposit of the state funds. The court held that the state had no right of recovery against the treasurer

or his bondsmen. In the course of the opinion in that case, the court took occasion to say:

"By accepting the office, and entering upon the duties of the same, the treasurer assumes all the obligations incident to a faithful, and honest discharge of those duties, and the object to be attained by the execution of the official bond is that the state may have the undertaking of others as sureties for the treasurer, and while the sureties in such case are liable upon the bond in all cases where the principal is clearly liable, they are nevertheless sureties, and ought not to have their obligations extended by doubtful construction beyond the terms of the law, and the bond or contract which they have entered into. It is not necessary to cite authorities in support of this well-recognized rule of law. When all the funds, which by the terms of the law are properly in the hands of the treasurer, have been fully accounted for, and paid over, to hold the parties liable for other funds that have been acquired in violation of law, and in acquiring which the treasurer may be prosecuted in criminal actions, is extending the terms of the bond beyond anything that the parties could reasonably be held to contemplate at the time of its execution."

The above language is peculiarly applicable to the facts that existed at the time defendant Schamber was in office.

State v. Walsen, supra, was published in 1892. The material facts in that case were identical with the facts in this case, and the statute in force in Colorado was identical in effect with the provisions of section 11, art. 11, of our Constitution. The rule laid down in State v. Walsen was accepted as the law in this state.

All of defendant's predecessors in office, since the adoption of the Constitution, had received and retained interest on the public funds. In fact it was well known that such interest was the inducement to accept the office and assume the financial responsibilities incident thereto. The sureties on the treasurer's bond executed such bond with the understanding that the treasurer was to have whatever interest he might collect for the use of the public money, and also with the understanding that, when the treasurer had accounted for all the funds that came into his hands from the state, his liability, and theirs as well, was at an end.

It is not out of place to say that the right of the state treasurer to take interest on the state funds was a subject of common discussion throughout the state when the defendant Schamber took his office, in January, 1899. At the convening of the Legislature in January, 1899, the Governor of the state, in his message to the Legislature, notified that body that the state treasurer who immediately preceded Schamber had received and retained more than $50,000 in interest on state funds during his incumbency in office. As appears from the correspondence in the offices of the Governor and the Attorney General, the Attorney General was called upon for an opiinon as to the right of the treasurer to take interest on the state founds. In a lengthy and carefully prepared communication, the Attorney General reviewed the law and the decisions from the other states, and expressed the opinion that the state was not entitled to such interest. He appears to have convinced the Governor that such was the law, for no steps for the recovery of said interest were taken; and, at the convening of the following Legislature, the Governor recommended the enactment of a depositary law, providing for the collection of interest on the state funds for the use and benefit of the state.

State v. McFetridge, 84 Wis..473, 54 N. W. 1, 998, 20 L. R. A. 223, is a case brought by the state of Wisconsin for the recovery of interest on state funds that had been collected by the defendant while state treasurer. The court held that the state was entitled to such interest. This is regarded as the leading case in support of such right. But the Wisconsin court distinguishes the Walsen case because of the statutory and constitutional provisions in force in Colorado, and our attention has not been called to any case from a state where they have a statutory or constitutional provision similar to those in force in this state and in Georgia, Indiana, and Colorado in which the state has been allowed to recover.

It may have been wrong from a moral standpoint, and criminal under the Constitution, for the treasurer to take and appropriate to his own use interest on the public funds, and it may be that the treasurer had no legal right to retain such interest after it had been collected, but the state has shown no better right

to it and, under the law as it was at the time Schamber was treasurer, the state is not entitled to recover.